Filed 6/24/14

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HECTOR F.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>EL CENTRO ELEMENTARY SCHOOL DISTRICT et al.,<br><br>    Defendants and Respondents. | D064035<br><br>(Super. Ct. No. ECU06862) |

APPEAL from a judgment of the Superior Court of Imperial County, Diane B. Altamirano, Judge. Reversed.

California Rural Legal Assistance, Cynthia L. Rice and Franchesca S. Gonzalez for Plaintiff and Appellant.

Stutz Artiano Shinoff & Holtz, Daniel R. Shinoff and Paul V. Carelli, IV, for Respondents and Defendants.

By way of its enactment of a scheme of interrelated statutes, the Legislature has imposed on public schools in California an affirmative duty to protect public school students

---

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part IV.

from discrimination and harassment engendered by race, gender, sexual orientation or disability. (See Gov. Code, § 11135; Ed. Code §§ 201, 220, 32261, 32280, 32281 & 32282.) In particular, Education Code section 32282 requires that public schools develop and implement comprehensive school safety plans which include a discrimination and harassment policy. (Ed. Code, § 32282, subd. (a)(2)(E).) The legislature has encouraged schools to include in their safety plans, "to the extent that resources are available . . . policies and procedures aimed at the prevention of bullying." (Ed. Code, § 32282, subd. (f).)

Appellant Hector F. is the father of three children. While Hector's oldest son, Brian, was a student at King Elementary School (King) and Kennedy Middle School (Kennedy), in El Centro, Brian was diagnosed with a number of emotional disabilities. Although an individualized education plan was developed for Brian, according to Hector's petition for a writ of mandate, Brian was subjected to physical and verbal abuse by other children because of his disabilities and the fact that English is his second language. In response to complaints about the abuse Hector and his wife made, Hector alleges school officials did not intervene and provide any protection for Brian, but instead suggested Brian change classrooms.

Hector filed a complaint for damages and a petition for a writ of mandate in the trial court. Hector, as guardian ad litem, sought damages on behalf of Brian and, on his own behalf, relief in mandate and as a taxpayer requiring that respondent El Centro Elementary School District (the district), which operates King and Kennedy, comply with the requirements of the discrimination and harassment provisions of the Government Code and the Education Code. In particular Hector alleged on information and belief that the district

2

has neither adopted nor implemented comprehensive safety plans for its schools that meet the requirements of Education Code section 32282.

Brian matriculated from Kennedy before these proceedings commenced and attends a high school operated by a separate school district. However, Hector's younger two children were enrolled at King at the time Hector filed his petition.

The district filed a demurrer to that portion of Hector's complaint and petition in which Hector sought relief on his own behalf. The district asserted that because Brian no longer attends any school operated by the district and because Hector has not alleged his other children have been subjected to discrimination or harassment, Hector does not have standing to assert, as an individual, and on his own behalf, any violation of the statutory provisions he relies upon. The trial court sustained the district's demurrer without leave to amend and entered judgment in favor of the district on Hector's individual claims. We reverse.

As a citizen and taxpayer Hector has standing to seek enforcement of laws in which there is an identified public as well as private interest. The statutory provisions asserted by Hector articulate a well identified public interest in maintaining a system of taxpayer funded public education which is free of the destructive influence of discrimination, harassment and bullying.

Because Hector has standing to bring his claims, we reverse the judgment and remand for further proceedings.

3

FACTUAL BACKGROUND

Brian attended King and Kennedy between 2008 and 2011. According to the allegations in Hector's complaint and petition for a writ of mandate, Brian is not a native English speaker, and has been diagnosed with a number of emotional disabilities including bipolar disorder, depression, attention deficit disorder and posttraumatic stress disorder. According to Hector, while Brian was a student at Kennedy, Brian was forcibly restrained by other students, beaten, kicked, and forced to endure derogatory comments, epithets and ethnic slurs.

Hector did not become aware of the harassment Brian was enduring until Brian was in the 7th grade and Hector noticed large bruises and scratches on Brian's body. On December 16, 2010, Hector and his wife reported the bruising and scratches to the Kennedy vice-principal, who took photographs of Brian's injuries. Hector and his wife also reported the injuries to Brian's bilingual teacher.

Notwithstanding the reports Hector and his wife made, Brian continued to be harassed and bullied. In April of 2011, Brian completed a three-page "Incident Report" which identified the students who had been harassing him and described what he had endured. Brian reported "routinely being hit and having objects thrown at him while in the classroom, bathroom, hallways and recess areas." Brian further reported being subjected to "verbal threats, taunting, and name calling."

4

On May 18, 2011, Brian was forcibly restrained during a physical education class and kicked repeatedly in the legs. Following this assault, Brian filed a second "Incident Report" which identified the students who attacked him and the particular student who led the others in doing so.

A week after the physical education incident Hector and his wife wrote a letter to the Kennedy principal setting forth the problems Brian was experiencing. On May 31, 2011, the principal met with Hector and his wife to discuss the problem. The principal suggested that Brian be removed from the only bilingual classroom at Kennedy. Hector and his wife rejected that proposal.

PROCEDURAL HISTORY

In January 2012, Hector, acting in pro per, filed a complaint against the district for damages on behalf of Brian. The district demurred to the original complaint on the grounds that, as a nonlawyer, Hector could not represent his son in Brian's action against the district. In response to the district's demurrer, Hector obtained representation from a nonprofit legal services organization, California Rural Legal Assistance, Inc. (CRLA).

On behalf of Brian and Hector, CRLA eventually filed the operative pleading in this case, the third amended complaint (TAC). The TAC alleged three causes of action which seek relief by way of mandate, one cause of action for declaratory relief, one cause of action which alleges the waste of taxpayer funds and one cause of action for negligence. The mandate and declaratory relief causes of action alleged violations of the state's antidiscrimination and antiharassment statutes; the mandate causes of action asked for an

5

order compelling the district to comply with its statutory obligations and the declaratory relief action asked for a determination the district violated those obligations.

The taxpayer cause of action alleged the district wasted funds in responding to harassment complaints because the district did so in a manner which discriminated against Hispanic students and students with disabilities. The negligence cause of action alleged that the district and individual employees of the district did not properly respond to complaints that Brian was being subjected to physical and verbal abuse.

The district filed a demurrer to the TAC in which it argued that neither Brian nor Hector had standing to seek any mandatory or declaratory relief. The district also argued the plaintiffs' taxpayer cause of action improperly sought an injunction preventing the district from paying its employees. The demurrer did not challenge the plaintiffs' negligence cause of action.

The trial court sustained the demurrer without leave to amend and entered a judgment of dismissal against Hector.

Hector filed a notice of appeal after the trial court sustained the demurrer but before entry of judgment against him. In the interests of justice and to prevent unnecessary delay, we treat Hector's appeal as taken from the judgment. (*Boyer v. Jensen* (2005) 129 Cal.App.4th 62, 69.)

DISCUSSION

I

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly

6

pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## II

As we noted at the outset, the Legislature has enacted a scheme of interrelated statutes which attempt to protect public school students from discrimination and harassment engendered by race, gender, sexual orientation or disability. (See Gov. Code, § 11135; Ed. Code, §§ 201, 220, 32261, 32280, 32281 & 32282.) By its terms Government Code section 11135 subdivision (a) states in pertinent part: "No person in the State of California shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, genetic information, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

7

In turn, Education Code section 201 states in pertinent part:

"(a) All pupils have the right to participate fully in the educational process, free from discrimination and harassment.

"(b) California's public schools have an affirmative obligation to combat racism, sexism, and other forms of bias, and a responsibility to provide equal educational opportunity.

"(c) Harassment on school grounds directed at an individual on the basis of personal characteristics or status creates a hostile environment and jeopardizes equal educational opportunity as guaranteed by the California Constitution and the United States Constitution.

"(d) There is an urgent need to prevent and respond to acts of hate violence and bias-related incidents that are occurring at an increasing rate in California's public schools.

"[¶] . . . [¶]

"(f) It is the intent of the Legislature that each public school undertake educational activities to counter discriminatory incidents on school grounds and, within constitutional bounds, to minimize and eliminate a hostile environment on school grounds that impairs the access of pupils to equal educational opportunity."  (Ed. Code, § 201)

As a means of implementing the right of students to be free of discrimination and harassment set forth in Education Code section 201, Education Code section 32281 subdivision (a) provides that each school district is responsible for the development of comprehensive school safety plans for each of its schools.  Education Code section 32282, subdivision (a)(2)(E) provides that, among other matters, each comprehensive school safety plan shall include a discrimination and harassment policy consistent with the prohibition

8

against discrimination contained in [Education Code section 201]." Education Code section 32282, subdivision (f) further provides that: "As comprehensive school safety plans are reviewed and updated, the Legislature encourages all plans, to the extent that resources are available, to include policies and procedures aimed at the prevention of bullying."

As we explain, *post*, Hector had standing to seek enforcement of these antidiscrimination and antiharassment enactments.

## III

In the seminal case of *Green v. Obledo* (1981) 29 Cal.3d 126, 144, the court set forth the standing principles which govern Hector's mandate claims: "It is true that ordinarily the writ of mandate will be issued only to persons who are 'beneficially interested.' (Code Civ. Proc., § 1086.) Yet, in *Bd. of Soc. Welfare v. County of L.A.* (1945) 27 Cal.2d 98, this court recognized an exception to the general rule ' "where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced" ' (*id*., at pp. 100-101). The exception promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right. (*Id*. at p. 100.) It has often been invoked by California courts." (*Green v. Obledo*, at p. 144.)

In *Green v. Obledo*, the plaintiffs challenged a state regulation which limited the work related expenses welfare recipients could exclude from their household income in calculating the amount of their welfare grants. In particular the regulation provided a flat mileage rate

9

deduction for automobile use rather than a recipient's actual automobile costs. However the regulation also imposed limitations on the amount of other work-related expenses that could be deducted from household income.

The plaintiffs alleged the regulation was in conflict with the federal law which established and governed the welfare program and further that their actual transportation costs exceeded the amount of the mileage allowance permitted under the regulation. The plaintiffs, although they did not allege that the other work-expense limitations had affected them, challenged the regulation in its entirety and sought relief in mandate from it.

The trial court found the plaintiffs had standing to challenge the automobile expense limitations, but no standing with respect to the remainder of the regulation. The Supreme Court disagreed and found standing with respect to the entire statute: "There can be no question that the proper calculation of AFDC benefits is a matter of public right [citation], and plaintiffs herein are certainly citizens seeking to procure the enforcement of a public duty. [Citation.] It follows that plaintiffs have standing to seek a writ of mandate commanding defendants to cease enforcing [the regulation] in its entirety. The trial court erred in ruling otherwise, and in limiting the scope of the evidentiary hearing accordingly. Plaintiffs are therefore entitled to a new hearing on their cause of action for writ of mandate, and to a determination of the validity of the remainder of the regulation." (*Green v. Obledo*, *supra*, 29 Cal.3d at p. 145, fn. omitted.)

Significantly, the public interest exception to the rule requiring litigants seeking mandate have a beneficial interest in the relief they seek has been applied with respect to duties imposed by the Legislature on schools and school districts. In *Doe v. Albany Unified*

10

*School District* (2010) 190 Cal.App.4th 668 (*Doe*), the court considered relief available under the provisions of Education Code section 51210, which require that public school curriculum include not less than 200 minutes of physical education each 10 school days. In finding the public interest exception applied to permit enforcement of the physical education requirement by members of the public, the court stated: "As for plaintiff Donald D., if his interest as the parent of plaintiff Doe in the latter's education is not a sufficient beneficial interest in itself [citation], he certainly has an interest as a citizen in seeing that section 51210, subdivision (g), is properly enforced. 'The beneficial interest standard is so broad, even citizen or taxpayer standing may be sufficient to obtain relief in mandamus. "[W]here a public right is involved, and the object of the writ of mandate is to procure enforcement of a public duty," a citizen is beneficially interested within the meaning of Code of Civil Procedure section 1086 if "he is interested in having the public duty enforced." [Citation.]' [Citation.] This public interest exception ' " 'promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.' " ' " (*Doe*, *supra*, 190 Cal.App.4th at p. 685.)

At this juncture we hasten to point out the district's reliance on *Tinsley v. Palo Alto Unified School District* (1979) 91 Cal.App.3d 871, 887-888 (*Tinsley*), is misplaced. In *Tinsley* which was decided before *Green v. Obledo*, the court found the plaintiffs' interest as parents and members of the public "may make them proper parties and justify their intervention in [a school desegregation] action." (*Tinsley*, *supra*, 91 Cal.App.3d at p. 888.) However the court held that if the parents could act as members of the public to assert students rights to desegregated schools, on remand their children should also be joined as

11

party plaintiffs in the parents' action. (*Ibid*.) Thus, the holding in *Tinsley* does not suggest members of the public do not have standing to enforce the educational rights of public school students; rather the holding in *Tinsley* is to the contrary. Moreover in light of *Green v. Obledo*, the requirement imposed in *Tinsley* that in such cases students be joined as parties is subject to question.

The public interest exception is not unlimited and does not provide the public standing in all contexts. Indeed the court in *Green v. Obledo*, *supra*, 29 Cal.3d at p. 145 recognized the public interest exception "may be outweighed in a proper case by competing considerations of a more urgent nature." In *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793 (*Carsten*), a member of the board of the administrative agency responsible for licensing psychologists disagreed with the board's decision to approve applicants who had achieved a passing grade on a national examination rather than the 75 percent grade expressly required under the terms of a previous version of Business & Professions Code section 2942. (*Carsten*, at p. 804.) In finding the public interest exception did not provide standing to the dissenting board member, the court expressly recognized "there are circumstances under which a citizen-taxpayer may compel a governmental instrumentality to comply with its constitutional or statutory duty." (*Id.* at p. 797.) However, in light of the board member's participation in the very decision she was challenging, the court found that providing her standing would unduly undermine the administrative process: "Unquestionably the ready availability of court litigation will be disruptive to the administrative process and antithetical to its underlying purpose of providing expeditious disposition of problems in a specialized field without recourse to the judiciary. Board

12

members will be compelled to testify against each other, to attack members with conflicting views and justify their own positions taken in administrative hearings, and to reveal internal discussions and deliberations. Litigation—even the threat of litigation—is certain to affect the working relationship among board members. In addition, the defense of lawsuits brought by dissident board members—and such suits would undoubtedly be frequent—will severely tax the limited budgetary resources of most public agencies." (*Carsten*, at p. 799.)

In *Sacramento County Fire Protection Dist. v. Sacramento County Assessment Appeals Bd*. (1999) 75 Cal.App.4th 327, 330-335 (*Sacramento County Fire Protection Dist.*), a local assessment appeals board accepted a stipulation between a county assessor and a landowner substantially reducing the value of a large tract of land that had been contaminated. By virtue of the reduction a local fire district was required to pay the landowner a substantial refund of taxes the district had collected. The court found the district had no special interest in the assessment over and above the interest of the public at large and that allowing the district to challenge the reduced assessment by mandate under the public interest exception would undermine the assessment process in which the district's interests was adequately represented by the county. (*Id*. at pp. 331-334.)

Here, there is a manifest public interest in enforcing the antidiscrimination and antiharassment statutes Hector asserts. Indeed in enacting the statutes the Legislature itself has articulated that interest: "It is the policy of the State of California to afford all persons in public schools, regardless of their disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any other characteristic . . . equal rights and opportunities in the educational institutions of the state. The purpose of this

13

chapter is to prohibit acts that are contrary to that policy and to provide remedies therefor." (Ed. Code, § 200.) More particularly in enacting Education Code section 201, the Legislature found both that: "(c) Harassment on school grounds directed at an individual on the basis of personal characteristics or status creates a hostile environment and jeopardizes equal educational opportunity as guaranteed by the California Constituion and the United States Constitution" and "(d) There is an urgent need to prevent and respond to acts of hate violence and bias-related incidents that are occurring at an increasing rate in California's public schools." (*Id*. at subds. (c) & (d).)

Plainly the public interest in ensuring public schools are free from discrimination, harassment and bullying as articulated in Government Code section 11135, and Education Code sections 200, 201, 220, 32261, 32280, 32281 and 32282, is as great or greater than the public interest in assuring schools provide the mandated minimum number of hours of physical education the court considered in *Doe*. Thus a strong argument can be made that if the public interest exception permits members of the public to enforce the relatively narrow physical education requirements of Education Code 51210, members of the public may also enforce the broader provisions protecting students from discrimination, harassment and bullying.

Moreover, unlike the unique positions occupied by the plaintiffs in *Carsten*, *supra*, 27 Cal.3d at p. 799, and *Sacramento County Fire Protection Dist.*, *supra*, 75 Cal.App.4th at pp. 332-335, and the more urgent considerations which consequently arose in those cases, here there are no similar competing considerations which outweigh the public's well articulated interest in protecting public school students from bullying. Hector is not a

14

member of the board of trustees of the district or a responsible officer of the district charged with enforcing the duties he asserts. Thus, the conflicts of interest and perpetuation of litigation which were of concern in *Carsten* are not present here. Hector is not a public agency attempting to challenge an agreement made by another agency with a third party. Thus Hector's challenge to the district does not create the risk of undermining a carefully developed statutory scheme which delegates responsibility among local agencies, as was the case in *Sacramento County Fire Protection Dist.* Rather, Hector is like the individual plaintiffs in *Green v. Obeldo* and *Doe*: an individual citizen who is attempting to compel a public agency to perform duties he believes the law mandates.

In sum then, Hector's attempt to enforce the antidiscrimination and antiharassment statutes adopted by the Legislature falls squarely within the public interest exception to the rule which otherwise requires a beneficial interest in mandate actions. There is a manifest public interest in enforcing the antibullying statutes and there are no urgent competing interests which outweigh that public interest. Thus, the trial court erred in sustaining the district's demurrer on the grounds Hector lacked standing.

In particular, Hector had standing to assert his first three causes of action, which expressly seek relief in mandate. The public interest in enforcing the antidiscrimination and antiharassment statutes also provides Hector with standing to bring a taxpayer action under

15

Code of Civil Procedure section 526a. (See *Connerly v. State Personnel Board* (2001) 92 Cal.App.4th 16, 29.)[1]

IV

For the first time on appeal, the district argues that in any event Hector's complaint is defective because it does not allege the breach of a mandatory, ministerial duty. We may, of course, affirm a judgment on any grounds which appear in the record, notwithstanding the reasoning urged in or adopted by the trial court. (See *Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083.) Here, however, we decline to do so because Hector's complaint arguably alleges breach of a mandatory duty. (See *Redwood Coast Watershed Alliance v. State Board of Forests*, *supra*, 70 Cal.App.4th at pp. 962-969.) Moreover, even if the TAC did not explicitly allege breach of a mandatory duty, it is reasonably probable that Hector could amend the complaint to do so. (*Id.* at p. 965.)

---

[1]     Because Hector's declaratory relief action is largely duplicative of his mandate causes of action, arguably he also has standing to seek declaratory relief. However, we have not been able to find any case which has definitively extended the public interest exception to claims for declaratory relief. (See *In re Marriage Cases* (2008) 43 Cal.4th 757, 790-791; but see also *Redwood Coast Watershed Alliance v. State Board of Forestry* (1999) 70 Cal.App.4th 962, 969.) We also note that the district has not had the opportunity to assert, as an alternative argument, that the public interest exception does not extend to declaratory relief actions. In light of these circumstances, rather than deciding the issue, which may be of little practical consequence to the parties, our remand will be without prejudice to the district's right to argue in the trial court that, notwithstanding our determination Hector has standing to seek mandate and as a taxpayer, he lacks standing to maintain a declaratory relief action.

DISPOSITION

The judgment dismissing Hector's claim is reversed with instructions to vacate the order sustaining the district's demurrer. [2] Hector is to recover his costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

McDONALD, J.

O'ROURKE, J.

---

[2] Our disposition is without prejudice to the district's right to challenge Hector's standing, as a member of the public, to seek declaratory relief.