Filed 3/2/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CALIFORNIA DUI LAWYERS ASSOCIATION et. al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF MOTOR VEHICLES et. al., <br><br> Defendants and Respondents. | B278092 <br><br> (Los Angeles County Super. Ct. No.BC553552) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rita J. Miller, Judge. Reversed with directions.

Law Office of Robert S. Gerstein, Robert S. Gerstein; Law Office of Joshua C. Needle, Joshua C. Needle for Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Chris A. Knudsen Assistant Attorney General, Jacqueline P. Hoang and Gary S. Balekjian, Deputy Attorneys General, for Defendants and Respondents.

# INTRODUCTION

The California DUI Lawyers Association and attorney Stephen R. Mandell (collectively, CDLA) brought a taxpayer action against the California Department of Motor Vehicles and Jean Shiomoto, director of the Department (collectively, DMV). CDLA alleged that the DMV conducts administrative hearings to determine whether automatic suspension of a driver's license is warranted after the driver has been arrested for driving under the influence. CDLA alleged that at these hearings, the hearing officers simultaneously act as advocates for DMV and as triers of fact. CDLA alleged that the lack of a neutral hearing officer violates drivers' rights to procedural due process under the California and United States Constitutions.

In deciding motions for summary judgment filed by both parties, the trial court held that CDLA did not have taxpayer standing to assert its claims. The court granted DMV's motion for summary judgment on that basis, and denied CDLA's motion for summary judgment. The trial court did not address the substance of CDLA's claims. CDLA appealed, and we reverse. Taxpayer standing under Code of Civil Procedure section 526a is appropriate under the circumstances of this case, in which a group of taxpayers has alleged that a government entity is engaging in "waste" by implementing and maintaining a hearing system that violates drivers' procedural due process rights. We therefore reverse the judgment and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Statutory background

This action involves the "administrative per se" or "APS" system used to suspend a driver's license following an arrest for

2

driving under the influence. "Under the administrative per se law, DMV must immediately suspend the driver's license of a person who is driving with .08 percent or more, by weight, of alcohol in his or her blood. ([Veh. Code,] § 13353.2, subd. (a)(1).) The procedure is called 'administrative per se' because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration . . . ." (*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 155.)

"When a driver is arrested for driving under the influence and is determined to have a prohibited blood-alcohol content (BAC), the arresting officer or DMV serves the driver with a 'notice of [an] order of suspension or revocation' of his or her driver's license, advising that the suspension will become effective 30 days from the date of service. (Veh. Code, §§ 13353.2, subds. (b) & (c); 13353.3, subd. (a).) The notice explains the driver's right to an administrative hearing before the effective date of the suspension if the driver requests a hearing within 10 days of receipt of the notice. (*Id*., §§ 13353.2, subd. (c); 13558, subd. (b).)" (*Brown v. Valverde* (2010) 183 Cal.App.4th 1531, 1536-1537 (*Brown*).)

At the hearing, "[t]he sole task of the hearing officer is to determine whether the arresting officer had reasonable cause to believe the person was driving, the driver was arrested, and the person was driving with a BAC of 0.08 percent or higher. If the hearing officer determines that the evidence establishes these three facts by a preponderance of the evidence, the license will be suspended. (Veh. Code, §§ 13558, subd. (c)(1); 13557, subd. (b)(2); 14104.2, subd. (a)." (*Brown, supra*, 183 Cal.App.4th at pp. 1537-

1538 [fn. omitted].)  DMV bears the burden of proof.  (*Petrus v. State Dept. of Motor Vehicles* (2011) 194 Cal.App.4th 1240, 1244 (*Petrus*).)

## B.     CDLA's complaint

CDLA filed a complaint on August 1, 2014, alleging that the APS hearing system is unfair and unconstitutional.  CDLA alleged that continued possession of a driver's license is a vital property right that cannot be suspended without due process of law.  According to the complaint, "[T]he APS system . . . *requires* the Hearing Officers to act both as advocate for the DMV *and* arbiter/decision maker, creating an obvious and inherent conflict of interest and bias favoring one party over the other."  CDLA alleged that as a result, the "APS hearings violate the State and Federal Due Process rights . . . of license holders by failing to provide a fair, neutral and impartial Hearing Officer."  In addition, "the APS system unconstitutionally allows DMV managers, executives, and/or administrators ex parte communications with the Hearing Officers and direct control over the decision-making process."  CDLA asserted that "[t]hese procedures and practices are unconstitutional on their face and as applied."

CDLA alleged that according to DMV written materials, the hearing officer at each APS hearing acts as investigator, advocate for DMV, and factfinder.  CDLA's complaint noted that California's Administrative Procedure Act (APA) (Gov. Code, § 11340 *et seq*.) states that a person may not serve as a presiding officer in an adjudicative proceeding where "[t]he person has served as investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage," or "[t]he person is subject to the authority, direction, or discretion of a person who has served as

4

investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage." (Gov. Code, § 11425.30, subd. (a)(1) & (2).) However, the Vehicle Code "specifically exempts the APS adjudicative hearings from the prophylactic separation of functions mechanism set forth in the APA." CDLA also alleged that hearing officers' "initial . . . decision to set aside a suspension is subject to ex parte review, criticism, and unilateral reversal" by DMV management, "prior to it being issued to the licensee, without notice or input from the licensee."

CDLA stated that it is "a non-profit association of California lawyers who defend those accused of driving under the influence." It alleged that its members "reside, practice, and pay property taxes in Los Angeles County and throughout the State of California." Individual plaintiff Mandell is a licensed attorney, not a member of CDLA, who also paid property taxes in Los Angeles County.

CDLA asserted three causes of action: violation of 42 U.S.C. § 1983 (section 1983) affecting due process rights under the Fourteenth Amendment to the United States Constitution, violation of due process rights under California Constitution Article I, Section 7, and "illegal expenditure of funds." CDLA sought declaratory and injunctive relief, costs, and attorney fees.

C.    **CDLA's motion for summary judgment**

CDLA and DMV each moved for summary judgment. We address CDLA's motion first.

CDLA asserted that DMV had admitted the following facts in discovery: APS hearings are "adversarial" and "adjudicative"; the hearing officer's role at an APS hearing is "trier of fact as well as an advocate for the department and driver safety"; and a hearing officer's APS decision is subject to review by a manager,

5

and subject to alteration by that manager, without notice to a driver or the driver's attorney.

CDLA argued that continued possession of a driver's license was a fundamental property right that could not be suspended or revoked without due process protections. It asserted that the combination of advocate and adjudication roles in a single, subordinate DMV employee violated required due process protections. CDLA pointed to the provision of the APA that bars a person from serving as a presiding officer in an adjudicative proceeding if that person "has served as investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage." (Gov. Code, § 11425.30, subd. (a)(1).) CDLA noted that Vehicle Code section 14112, subdivision (b), specifically exempts APS hearings from this requirement: "Subdivision (a) of Section 11425.30 of the Government Code does not apply to a proceeding for issuance, denial, revocation, or suspension of a driver's license pursuant to this division." (Veh. Code, § 14112, subd. (b).)

CDLA argued, "Exceeding their statutory license under Veh. C. § 14112(b), and their constitutional obligations, DMV has designed and implemented the current APS system where the presiding Driver Safety Hearing Officer is (1) subordinate to the ex parte command influence of the Department and (2) acts as both adjudicator and advocate for the Department." CDLA argued that these procedures were constitutionally inadequate as applied, and "[i]f the Department responds that this system is what the Legislature mandated or is the only one they can devise[,] then the statutory exemption is constitutionally infirm on its face."

6

With its motion, CDLA submitted evidence including DMV's Driver Safety Manual (which CDLA characterized as "an important reference tool for the Drive[r] Safety Hearing Officers in the conduct of their jobs"); an article in which DMV describes the APS system; legislative history for the APA statutory scheme; excerpts of deposition transcripts of two DMV employees; and the DMV's responses to written discovery requests.

**D.     The DMV's motion for summary judgment**

In its motion for summary judgment, DMV asserted that the first cause of action based on section 1983 and the second cause of action based on the California Constitution failed because CDLA was not directly affected by the APS system and therefore lacked standing to challenge it. DMV also contended that with respect to all three causes of action, CDLA could not assert taxpayer standing because the challenged conduct complied with the Vehicle Code and was therefore legal, and CDLA's disagreement with the manner in which DMV chose to apply the law could not provide a basis for taxpayer standing.

DMV also sought summary judgment or summary adjudication on the merits for each cause of action. It argued that the section 1983 cause of action lacked merit because the dual rules of APS hearing officers as advocate and trier of fact did not violate drivers' procedural due process rights. DMV also asserted that drivers' due process rights were protected because drivers whose licenses were suspended or revoked could petition for writs of mandate in superior court. DMV further argued that a section 1983 claim could not be brought against a state entity, and Shiomoto, as Director of that agency, was immune from liability. In addition, DMV asserted that the second cause of action based on the California Constitution failed because such claims could

7

not be asserted as freestanding causes of action. The DMV contended the third cause of action for illegal expenditure of funds failed because the DMV had a "legitimate business interest in managing its hearing officer employees."

The DMV submitted evidence with its motion, including written discovery requests to CDLA and Mandell; CDLA's and Mandell's responses to the discovery requests, and excerpts from the depositions of Mandell and CDLA representative Chad Maddox. This evidence focused on standing-related issues.

## E. The parties' oppositions to the motions for summary judgment

The parties opposed each others' motions. DMV argued that CDLA's motion and separate statement were procedurally deficient. It also argued that CDLA lacked standing for the same reasons asserted in the DMV's motion for summary judgment. DMV also repeated its arguments that the APS hearing process did not violate due process requirements, and therefore the cause of action under section 1983 failed. DMV asserted that CDLA filed to submit any evidence of actual bias, and its "claim of actual bias is supported by largely inadmissible, irrelevant, and mischaracterized evidence." DMV also contended that communications between hearing officers and DMV managers did not constitute impermissible ex parte communications. DMV repeated arguments from its motion that due process is provided through judicial review, the section 1983 claims could not be asserted against a state entity or Shiomoto, the claim based on the California Constitution was improper, and that DMV had a legitimate business interest in managing its employees.

DMV submitted evidence in support of its opposition, including excerpts from the deposition of Brian Dawson, a

regional manager for DMV. Dawson said that managers do not "typically" review hearing officers' work before their decisions are mailed, but if a hearing officer was having trouble reaching a decision the officer might meet with a manager to discuss the case. Dawson's office once had a policy of reviewing all "set asides"—decisions in which the hearing officer set aside the suspension instead of affirming it. DMV also submitted excerpts from the deposition of DMV hearing officer Cecelia Bethel, who testified that hearing officers review evidence to determine whether the paperwork alone is sufficient or whether it is necessary to subpoena the arresting officer. Another witness, hearing officer Patrice Sims, testified that managers do not tell hearing officers how to decide cases.

CDLA's opposition to DMV's motion repeated the arguments in CDLA's motion that the procedures of APS hearings violated due process protections and were unconstitutional, both facially and as applied. CDLA asserted that subsequent judicial review did not "negate the constitutional mandate to provide due process in the first instance." CDLA asserted that it had standing as a group of taxpayers and as a real party in interest. CDLA also argued that Shiomoto was not immune from liability under section 1983, and that the California Constitution supported the claim for injunctive and declaratory relief. Finally, CLDA asserted that DMV's interest in managing its employees did not override its duty to provide due process protections to drivers facing APS hearings.

CDLA submitted several deposition excerpts with its opposition. For example, CDLA submitted excerpts from the deposition testimony of DMV hearing officer Patrice Sims, who recalled one hearing in which she found the police officer's

testimony regarding probable cause to be not credible. She set aside the driver's suspension on that basis, but before the decision was sent to the driver, Sims's supervisors required her to change her decision to affirm the suspension. When Sims protested that she did not agree with the amended result, she was punished in that she was written up, sent to repeat the training in Sacramento required of all new hearing officers, placed on probationary status, and she lost status and advancement opportunities within DMV. CDLA also submitted excerpts from the deposition of DMV hearing officer Cecelia Bethel, who testified that in APS hearings, drivers have the burden of proof: "He [the driver] asked for the hearing," so "[t]hat's his burden to show the suspension is not warranted." Bethel also said that when she continued a hearing for good cause to allow the defense to present additional evidence, her supervisor told her that continuances were not allowed. Bethel recalled that she was reprimanded regarding the continuances. Bethel also said she had worked at DMV offices "where managers said no set asides." A third hearing officer, Joanne Serna, testified that the hearing officer prepares DMV's case, and if the driver rebuts the evidence presented by DMV, the hearing officer grants DMV a continuance to gather additional evidence. Serna said requests for continuances and additional evidence are often denied, and supervisors tell her that suspensions can be sustained without the additional evidence. Serna was written up for having too many set asides; the write-up letter compares her rates to "the office average," advises Serna to review her cases more thoroughly, and suggests that if "this problem is due to outside distractions," the employee assistance program is

available.  Each of these hearing officers testified that the hearing officer's role is both advocate for the DMV and factfinder.

The parties each filed replies.  The DMV also objected to portions of the evidence CDLA filed with its motion and opposition.

## F.    Hearing and court ruling

The court issued a written tentative ruling stating that it was inclined to grant DMV's motion and deny CDLA's motion on the basis that CDLA lacked standing.

The court stated that CLDA did not have standing to assert the first and second causes of action as real parties in interest because it was not alleging that its (or its members') due process rights were directly violated.  It noted that CDLA alleged in its complaint that its members are required to spend more time and money as a result of the unfairness of the APS system, and stated, "the DMV has shifted the burden of proof to the plaintiffs on this issue and the plaintiffs have submitted no evidence to support the allegation."

The court held that CDLA did not have taxpayer standing to assert the third cause of action for illegal expenditure of funds under Code of Civil Procedure section 526a (section 526a).  That section allows a taxpayer to bring an action to challenge "any illegal expenditure" or "waste" of government funds.  The court noted that a "cause of action under Code of Civil Procedure section 526a will not lie where the challenged governmental conduct is legal."  (*Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 714 (*Coshow*).)

The court reasoned that the statutes governing the APS procedure did not *require* that a hearing office be both advocate and trier of fact.  The court said, "Plaintiffs' challenge is not to

11

the legality of the statutes themselves, but rather, to the manner in which DMV implements the statutory scheme. . . . [A] taxpayer does not have standing to challenge the manner in which a governmental body implements an otherwise valid statute." The court also stated, "It is possible that the manner in which DMV is implementing the statute violates due process of law. But it is the manner in which DMV is implementing it, rather than the statute itself, that arguably violates the law. Taxpayers do not have standing to challenge the manner of implementation, which is what the plaintiffs are attempting to do here."

The court concluded that because CDLA did not have standing, DMV's motion for summary judgment should be granted. The court held that in light of its ruling on DMV's motion, CDLA's motion for summary judgment was denied because CDLA lacked standing.

CDLA moved for a new trial, arguing that the court's standing ruling was erroneous. The DMV opposed the motion. The court denied the motion, and judgment was entered in favor of DMV. CDLA timely appealed.

### DISCUSSION

#### A.     Standing under section 526a

The trial court held that CDLA had neither taxpayer standing under section 526a, nor standing as a real party in interest. CDLA does not challenge the court's finding regarding real-party-in-interest standing, and asserts that only taxpayer standing is relevant on appeal. DMV also acknowledges that only taxpayer standing is relevant. We therefore address only taxpayer standing.[1]

---

[1] The trial court did not address the question of taxpayer standing with respect to the first or second causes of action.

Section 526a states in relevant part, "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

"However strict the concept of standing may be in other contexts, it has been considerably relaxed by section 526a." (*Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 481 (*Chiatello*).)  "This relaxation is a consequence of the salutary goal of section 526a:  'The primary purpose of this statute, originally enacted in 1909, is to "enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement."  [Citation.]  [¶] California courts have consistently construed section 526a liberally to achieve this remedial purpose.'" (*Ibid.*)

"Both standing and the interpretation of statutes are questions of law to which we typically apply a de novo standard of review." (*San Luis Rey Racing, Inc. v. California Horse Racing Board* (2017) 15 Cal.App.5th 67, 73.)  Here, the facts relevant to taxpayer standing are not in dispute, and therefore we consider the issue de novo.

---

Nonetheless, we may consider the issue for the first time on appeal.  (See, e.g., *Steadman v. Osborne* (2009) 178 Cal.App.4th 950, 954-955 ["It is well settled that a party may raise the issue of standing for the first time on appeal."].)

13

DMV challenges CDLA's standing under 526a on two bases: CDLA has not demonstrated an "illegal expenditure" or "waste" under the statute, and the hearing procedure would not "otherwise go unchallenged" in the absence of this taxpayer action. We address the waste issue first.

1.    *Illegal expenditures or waste*

Case law has made clear that "waste" does not encompass discretionary governmental action. "[A] taxpayer is not entitled to injunctive relief under Code of Civil Procedure section 526a where the real issue is a disagreement with the manner in which government has chosen to address a problem." (*Coshow, supra,* 132 Cal.App.4th at p. 714.) Thus, "the term 'waste' as used in section 526a means something more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion." (*Sundance v. Municipal Court* (1986) 42 Cal.3d 1101, 1138.)

DMV argues that taxpayer standing is lacking because "the Vehicle Code requires that the APS hearing officer be a DMV employee, and the DMV has discretion in how it applies Vehicle Code section 14112, subdivision (b) to the officer role."[2] CDLA asserts that it is challenging "a hearing structure that by its very

_____

[2] Vehicle Code section 14104.2, subdivision (a) states, "Any hearing shall be conducted by the director or by a hearing officer or hearing board appointed by him or her from officers or employees of the department." Vehicle Code section 14112, subdivision (b) states, "Subdivision (a) of Section 11425.30 of the Government Code does not apply to a proceeding for issuance, denial, revocation, or suspension of a driver's license pursuant to this division." Government Code section 11425.30, subdivision (a) is the APA provision stating that anyone serving as an investigator may not also act as a presiding officer in a hearing.

14

nature violates drivers' due process rights, which no governmental agency has discretion to do."  Indeed, "it is unquestionably waste for government to budget or spend money administering an illegal ordinance."

If the APS system violates drivers' due process rights, as CDLA alleges, it is illegal and a waste under section 526a.  "A driver's license cannot be suspended without due process of law." (*Cinquegrani v. Department of Motor Vehicles* (2008) 163 Cal.App.4th 741, 750; see also *Petrus, supra,* 194 Cal.App.4th at p. 1244; see also *Nightlife Partners v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 90 (*Nightlife Partners*) ["The protections of procedural due process apply to administrative proceedings . . . ; the question is simply what process is due in a given circumstance."].)  "'The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."'  [Citations.]  The opportunity to be heard must be afforded 'at a meaningful time and in a meaningful manner.'  [Citations.]  To ensure that the opportunity is meaningful, the United States Supreme Court and [the California Supreme Court] have identified some aspects of due process as irreducible minimums.  For example, whenever 'due process requires a hearing, the adjudicator must be impartial.'"  (*Today's Fresh Start, Inc. v. Los Angeles County Office of Educ.* (2013) 57 Cal.4th 197, 212.)  In other words, "Due process . . . *always* requires a relatively level playing field, the 'constitutional floor' of a 'fair trial in a fair tribunal,' [is] a fair hearing before a neutral or unbiased decision-maker."  (*Nightlife Partners, supra*, 108 Cal.App.4th 81, 90 (emphasis in original).)

Due process guarantees apply to the APS system with respect to drivers' license suspensions. (See, e.g., *Hall v. Superior*

15

*Court* (2016) 3 Cal.App.5th 792, 808-809 [" '[T]he constitutional guarantee of due process of law requires a fair tribunal'" for an APS hearing.].) In other contexts, courts have found that lack of a neutral factfinder or ex parte communications between the decision-maker and other agency employees may render an administrative hearing unfair. (See, e.g., *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 10 ["Procedural fairness does not mandate the dissolution of unitary agencies, but it does require some internal separation between advocates and decision makers to preserve neutrality"]; *Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, 1585 [in an employment appeal involving a deputy sheriff, combining advocacy and decision-making roles "is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator"]; *Rondon v. Alcoholic Beverage Control Appeals Bd.* (2007) 151 Cal.App.4th 1274, 1289 [decision-makers' practice of reviewing hearing reports prepared by prosecuting attorneys after the hearing but before issuing final decisions violated the APA's prohibitions against ex parte communications and use of extra-record information]; *Nightlife Partners, supra*, 108 Cal.App.4th at p. 94 [city attorney's "role as advisor to the decision-maker" regarding denial of the plaintiff's regulatory permit "violated petitioners' right to due process" because the attorney "acted as both an advocate of City's position and as advisor to the supposedly neutral decision-maker"].)

DMV acknowledged in discovery that DMV is a party to an APS hearing, the hearing is adversarial, and the hearing officer's role involves both advocating on behalf of DMV and acting as factfinder. CDLA asserts that this violates the irreducible minimums of procedural due process, and is therefore illegal.

16

CDLA has thus asserted a claim of waste that fits the parameters of section 526a.

DMV argues that CDLA does not have standing because the APS system is "legal." It asserts that "DMV hearing officer's role as decisionmaker and advocate is authorized by both statute and case law," and therefore taxpayer standing is unavailable. CDLA counters that this argument is circular: "The DMV is arguing that CDLA has standing to challenge the DMV for due process violation, illegality, or wastefulness, only if it first proves that the DMV violates due process, acts illegally, or is wasteful. The circularity of that reasoning condemns itself."

We agree with CDLA: the DMV's argument that the allegedly unconstitutional action is "legal" seeks to limit standing—a threshold issue—based on a substantive determination of the ultimate issue in this case. "'The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a . . . court and not on the issues he wishes to have adjudicated.'" (*Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 159.)

Cases that challenge the legality or constitutionality of governmental actions fall squarely within the purview of section 526a. In *Blair v. Pitchess* (1971) 5 Cal.3d 258, for example, the Supreme Court considered the constitutionality of "California's claim and delivery law"—a series of statutes allowing a plaintiff to have a sheriff seize property from a defendant before any adjudication of the issues between the parties. (*Id.* at p. 265-266.) Plaintiff taxpayers filed an action against Los Angeles County and others, alleging that the claim and delivery law was unconstitutional. The defendants asserted that the plaintiffs lacked standing, but the court rejected this argument: "It is clear

17

that the present action was properly brought under section 526a. Plaintiffs have alleged, and by their affidavits have established, that they are residents and taxpayers of the County of Los Angeles. . . . If the claim and delivery law is unconstitutional, then county officials may be enjoined from spending their time carrying out its provisions." (*Id*. at p. 269.)

*County of Santa Clara v. Superior Court* (2009) 171 Cal.App.4th 119 presents another example in which section 526a standing was appropriate to challenge the legality of government actions. In that case, the plaintiffs alleged that the government entity defendants mishandled "requests for specifically described types of public records." (*Id*. at p. 124.) The plaintiffs alleged that the defendants' "'policies and practices are illegal, in that they do not comply with state law regarding access to public records, including but not limited to, the California Public Records Act ('CPRA'), Health and Safety Code section 11495, Government Code section 12525, and the Political Reform Act.'" (*Ibid*.) The court held standing under section 526a was appropriate to challenge the government's actions: "The purpose of the CPRA is *furthered*, not obstructed, by citizen suits under Code of Civil Procedure section 526a to enforce the CPRA's provisions." (*Id*. at p. 130; see also *Hector F. v. El Centro Elementary School District* (2014) 227 Cal.App.4th 331, 342 ("The public interest in enforcing [California] antidiscrimination and antiharassment statutes also provides . . . standing to bring a taxpayer action under Code of Civil Procedure section 526a."].)

DMV's position that CDLA lacks standing because the DMV's actions are "legal" is based on cases that are factually inapposite. For example, DMV cites *Lyons v. Santa Barbara County Sheriff's Office* (2014) 231 Cal.App.4th 1499 (*Lyons*), in

18

which the plaintiff was evicted from her home following a nonjudicial foreclosure. The plaintiff then sued the local sheriff's department, the county recorder, and various employees of those entities, asserting that they unlawfully participated in the foreclosure process. In holding that defendants' demurrer was properly sustained, the Court of Appeal said the complaint was "a misguided section 526a collateral attack on the unlawful detainer judgment," and the plaintiff did not have taxpayer standing under section 526a. The Court of Appeal agreed with the trial court's assessment that "'the [recorder's] office is under a mandatory duty to accept the paperwork that's filed with it. It has no independent duty to determine whether or not that paperwork is fraudulent. Moreover, when the sheriff serves a writ of execution that's by order of the court. The sheriff has no discretion to refuse to serve that order.'" (*Id*. at p. 1502.) The court noted, "A taxpayer action does not lie where the challenged governmental conduct is legal." (*Id*. at p. 1503.)

DMV also cites *Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017 (*Lucas*), in which the plaintiff alleged that the defendant "entered into an employment contract with its general manager." (*Id*. at p. 1021.) The plaintiff conceded that the manager's contract was legal, and the court noted that in general, a section 526a action may not be used to challenge discretionary actions. (*Id*. at p. 1027.) The court held that the plaintiff's section 526a action was inappropriate, because the specifics of the legal contract were properly within the defendant agency's control: "This is a decision which lies within the sound discretion of the agency, pursuant to statutory authority. We may not disturb it." (*Ibid*.)

19

DMV argues, "Here, like the challenged governmental conduct in *Lyons* and *Lucas*, the DMV hearing officer's dual role as judge and proponent of DMV's evidence complies with statute and case law."[3]  But this case is unlike *Lyons* and *Lucas*, in that the plaintiffs in those cases did not challenge the legality or constitutionality of the laws that governed the governmental actions at issue.  Here, DMV's argument that it complied with the relevant Vehicle Code sections does nothing to address CDLA's allegation that those Vehicle Code sections are unconstitutional, either facially or as applied.[4]

CDLA's standing is therefore not undermined by the DMV's assertion that its actions are "legal."  The trial court's conclusion that CDLA lacked standing because the APS hearing system complied with the laws that CDLA challenges was erroneous.

---

[3] The trial court cited *Coshow, supra,* 132 Cal.App.4th 687, in holding that plaintiff did not have standing under section 526a.  In fact, the court in *Coshow* did not consider standing: "[B]ecause we address the merits of Coshow's constitutional challenge, we need not decide the issue of standing."  (*Id*. at p. 703, fn. 4.)

[4] Although the trial court interpreted CDLA's allegations as an as-applied challenge only, CDLA has made clear that it is asserting both facial and as-applied challenges.  Moreover, the trial court's distinction between a facial and as-applied challenges does not appear to be supported by case law relevant to section 526a taxpayer standing, although that distinction may be relevant in other contexts.  (See, e.g., *People v. Navarro* (2013) 212 Cal.App.4th 1336, 1350 n. 12 ["a party who fails to demonstrate that the statute is unconstitutional as applied to the party or to persuade the court of the merits of a facial challenge, 'has no "standing" to allege that, as applied to others, the statute might be unconstitutional.'"].)

2. *Other potential plaintiffs*

DMV also argues that CDLA did not have standing under section 526a because DMV's actions "would not otherwise go unchallenged in the absence of taxpayer actions." DMV asserts that "the Legislature has crafted mechanisms for drivers to challenge the results of DMV's APS hearings," such as seeking judicial review of DMV actions, and "[b]ecause there are ready avenues other than a taxpayer suit to challenge the statutory scheme at issue here, [CDLA does] not have standing."

This reasoning was rejected decades ago by the Supreme Court. "[T]he existence of individuals directly affected by the challenged governmental action . . . has not been held to preclude a taxpayers' suit. Numerous decisions have affirmed a taxpayer's standing to sue despite the existence of potential plaintiffs who might also have had standing to challenge the subject actions or statutes." (*Van Atta v. Scott* (1980) 27 Cal.3d 424, 447-448.) Moreover, the Court in *Blair v. Pitchess, supra,* held that limiting standing under section 526a by requiring only actions involving parties with individual interests would undermine the purpose of section 526a: "[T]he primary purpose of section 526a was to give a large body of citizens standing to challenge governmental actions. If we were to hold that such suits did not present a true case or controversy unless the plaintiff and the defendant each had a special, personal interest in the outcome, we would drastically curtail their usefulness as a check on illegal government activity." (*Blair v. Pitchess, supra*, 5 Cal.3d at p. 269.)

DMV relies on *Animal Legal Defense Fund v. California Exposition and State Fairs* (2015) 239 Cal.App.4th 1286 (*ALDF*), in which the plaintiffs attempted to bring a section 526a action,

21

alleging that the defendant state agency violated animal cruelty laws by transporting pregnant pigs to state fairs and confining them in fairground displays. (*Id*. at pp. 1291-1292.) In a demurrer, the defendants challenged whether the plaintiffs could assert a claim under section 526a; the demurrer was sustained. The Court of Appeal affirmed. It noted that a previous case held there was no private right of action under the animal cruelty statutes the plaintiffs asserted the defendants violated: "[T]he [*Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136] court concluded that recognition of a private right of action under [Penal Code] section 597t would be inconsistent with the Legislature's entrustment of enforcement of anticruelty laws to local authorities and humane societies." (*Id*. at p. 1297.) The court noted that California had a detailed legislative scheme regarding animal cruelty and enforcement of animal cruelty laws, and concluded, "Given this detailed legislative scheme, we believe the Legislature intended the enforcement mechanisms it established—and the entities in whom it entrusted such enforcement—to be the exclusive mechanisms for, and entities charged with, such enforcement. Put otherwise, the more general remedy of a taxpayer action was not intended to be used in their stead." (*Id*. at p. 1301.)

ALDF is not applicable here. The "statutory scheme" by which individuals' procedural due process rights are protected consists of the United States and California Constitutions, and the related statutes and case law interpreting and applying those provisions. Procedural due process rights do not have a specific statutory scheme and enforcement provisions similar to California's animal cruelty laws. CDLA has asserted those rights

22

here, and an action under section 526a is an appropriate means to do so.

### 3. *Common law standing*

CDLA also contends that it has taxpayer standing under the common law. "[C]ommon law authority for taxpayer suits [states] that a 'taxpayer in his representative capacity can sue a municipality *only* in cases involving *fraud, collusion, ultra vires, or a failure on the part of the governmental body to perform a duty specifically enjoined.*'" (*Los Altos Property Owners Assn. v. Hutcheon* (1977) 69 Cal.App.3d 22, 26.) "[A] governmental agency that acts outside of the scope of its statutory authority acts ultra vires and the act is void." (*Lamere v. Superior Court* (2005) 131 Cal.App.4th 1059, 1066 fn. 4.)

CDLA asserts that if "the DMV hearing structure is unlawful, its operation is ultra vires, giving rise to common law taxpayer standing." DMV counters that it "complied with applicable law" and therefore its actions were not ultra vires. As we discussed above, a determination of standing—a threshold issue—does not rely on a determination of the ultimate issues to be determined in the case. Because CDLA has challenged the APS system as unconstitutional and therefore ultra vires, CDLA has common law taxpayer standing to assert these claims.

Because CDLA had standing under section 526a and common law taxpayer standing, the trial court's holding that CDLA lacked standing was erroneous.

## B. Cross motions for summary judgment

CDLA asserts that if we find it had standing, we should proceed to decide the merits of the motions for summary judgment, grant CDLA's motion, and deny DMV's motion. DMV asserts that the scope of appellate review should be limited to

23

standing, and if we find that CDLA has standing, we should remand the case to the trial court for further proceedings.

"A litigant's standing to sue is a threshold issue to be resolved before the matter can be reached on its merits." (*Apartment Ass'n of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 128.) Here, the trial court decided only the threshold issue of standing. This appeal reaches us following cross-motions for summary judgment, in which the parties submitted evidence in support of their respective motions (including evidence of the combined advocate/factfinder roles of DMV hearing officers and evidence of substantial ex parte communications affecting the outcome of APS hearings). However, the trial court did not reach the merits of CDLA's claims.

In addition, the trial court did not reach evidentiary issues that typically guide the scope of appellate review. "Under the summary judgment statute, we examine the evidence submitted in connection with the summary judgment motion, with the exception of evidence to which objections have been appropriately sustained." (*Paslay v. State Farm General Insurance Company* (2016) 248 Cal.App.4th 639, 644.) Here, DMV filed objections to CDLA's evidence with its opposition and reply. It appears that the trial court did not rule on these objections.

Without the benefit of decisions from the trial court regarding the merits of the motions or the parties' objections, we decline to consider the parties' motions for summary judgment on appeal in the first instance.[5] We express no opinion on the issues that remain for determination.

_____

[5] CDLA requested that we judicially notice the legislative history for Vehicle Code section 14112, subdivision (b), in relation

24

## DISPOSITION

The judgment is reversed. On remand, the trial court shall vacate the orders granting DMV's motion for summary judgment and denying CDLA's motion for summary judgment. CDLA is entitled to costs on appeal.

**CERTIFIED FOR PUBLICATION**


COLLINS, J.

We concur:


EPSTEIN, P. J.


MANELLA, J.

---

to the substantive arguments in its motion for summary judgment. Because we are not considering the merits of CDLA's motion, the documents are not relevant to the issues herein. We therefore deny CDLA's request.