Filed 6/8/21 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JULIO FONSECA,<br><br>    Defendant and Respondent. | D077652<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on May 19, 2021, be modified as follows:

1. On page 15, footnote 6 is deleted and a new footnote 6 is inserted as follows:

We note SDOG in passing also contends that it has standing under common law standing principles even if section 526a is inapplicable. Because the instant case is not a suit against a government body (i.e., District) involving fraud, collusion, ultra vires or a failure to perform a duty specifically enjoined, but instead an action against an individual (i.e., Fonseca), we conclude SDOG lacks common law standing. (See *California Dui Lawyers Association v. California Department of Motor Vehicles* (2018) 20 Cal.App.5th 1247, 1264 [concluding " 'common law authority for taxpayer suits [states] that a "taxpayer in his representative capacity can sue a *municipality* only in

cases involving fraud, collusion, ultra vires, or a failure on the part of the governmental body to perform a duty specifically enjoined," ' " (italics added)].)  We also conclude SDOG lacks standing under the public interest exception to standing, as this exception "has been judicially recognized only in certain mandamus proceedings and not as an exception to standing under section 526a." (*Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 873.)  In light of our decision and this footnote, we decline to address other issues raised by the parties.

There is no change in the judgment.

The petition for rehearing is denied.

BENKE, J.

Copies to:  All parties

2

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JULIO FONSECA,<br><br>Defendant and Respondent. | D077652<br><br><br>(Super. Ct. No. 37-2017-00007369-CU-MC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Richard S. Whitney, Judge. Affirmed.

Briggs Law Corporation, Cory J. Briggs and Janna M. Ferraro, for Plaintiff and Appellant.

Winet Patrick Gayer Creighton & Hanes and Randall L. Winet for Defendant and Respondent.

Plaintiff San Diegans for Open Government (SDOG) sued defendant Julio Fonseca, the former superintendent of the San Ysidro School District (District), alleging Fonseca caused the illegal disbursement of District funds in a settlement between District and third party Enrique Gonzalez, a former District employee. The court bifurcated the trial and, after an evidentiary

hearing, found SDOG lacked standing under newly amended[1] Code of Civil Procedure[2] section 526a. As we explain, we conclude that SDOG did not meet the taxpayer requirements for standing under section 526a. Affirmed.

## BACKGROUND

In March 2017, SDOG sued Fonseca including under Government Code section 8314[3] for misappropriation of public funds, alleging, as relevant to this appeal, standing under section 526a. Fonseca was the superintendent of District from July 1, 2015 to September 1, 2017. Plaintiff's complaint alleged a single cause of action for declaratory, injunctive, and other equitable relief.

The complaint alleged that Fonseca unlawfully caused the disbursement of $113,433 by the San Diego County Office of Education, the public agency responsible for accounting for District's money and paying its bills. The complaint further alleged that Fonseca authorized the payment to Gonzalez in May 2016 pursuant to an alleged settlement agreement between

---

[1] After SDOG filed the instant action in March 2017, the Legislature amended Code of Civil Procedure section 526a to specify the types of tax payments that are sufficient to establish taxpayer standing. (Stats. 2018, ch. 319 (Assem. Bill No. 2376), § 1, eff. Jan. 1, 2019.) The parties do not dispute the amendment to this statute "applies prospectively to this case because the change in law does not alter the legal consequences of defendant['s] past conduct, but instead only expands the scope of who may sue under the statute." (*A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 682–683 (*Fistes*).)

[2] Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.

[3] Government Code section 8314 provides in relevant part: "(a) It is unlawful for any elected state or local officer, including any state or local appointee, employee, or consultant, to use or permit others to use public resources for a campaign activity, or personal or other purposes which are not authorized by law."

2

District and Gonzalez; and that the settlement arose after Gonzalez claimed he was unlawfully terminated by District in January 2016, during the probationary term of his employment, after he disclosed to a supervisor that Fonseca was having a personal relationship with another District employee who Fonseca had recommended the District hire.

In its prayer for relief, SDOG sought a judgment declaring the payment to Gonzalez be declared illegal, and Fonseca be held to repay to District all public monies that he caused to be illegally disbursed. SDOG also sought to recover its legal fees and other expenses incurred in this lawsuit.

Fonseca in his April 2017 answer generally denied the material allegations in the complaint and asserted 28 affirmative defenses. As relevant to this appeal, Fonseca's second affirmative defense alleged SDOG lacked standing to maintain this action.

Before trial, Fonseca moved for summary judgment including on the ground SDOG lacked standing. The court denied the motion.

In preparation for trial, the parties submitted multiple motions in limine, including one by Fonseca seeking bifurcation of trial under section 1048[4] among other statutes to allow the court to first decide whether SDOG had standing. In support of his argument plaintiff lacked standing, Fonseca among other points argued that SDOG was not located within District's jurisdiction; that he was not a party to the settlement agreement, and any taxpayer action by SDOG should have been against District and Gonzalez;

---

[4] Subdivision (b) of section 1048 provides: "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any cause of action, including a cause of action asserted in a cross-complaint, or of any separate issue or of any number of causes of action or issues, preserving the right of trial by jury required by the Constitution or a statute of this state or of the United States."

3

that at the deposition of SDOG's person most knowledgeable (PMK), chief executive officer Pedro Quiroz, Jr. "could not provide evidence of standing, and was instructed not to produce evidence or answer question[s] regarding individual members" of SDOG and whether they had standing; that there was no evidence SDOG "has paid taxes in the area of the local agency—San Ysidro School District"; and that in any event there was no private right of action under Government Code section 8314.

SDOG in response argued it had "associational standing" under section 526a to maintain this lawsuit "because its members satisfy the taxpayer requirements" of this statute.  Specifically, SDOG argued that it may sue on behalf of its members if it demonstrates that any of its members would have standing to sue in their own right; that certain of its members were "resident[s]" within the meaning of subdivision (d)(2) of section 526a, discussed *post*; that section 526a should be liberally construed to enable a taxpayer to challenge government action that might otherwise go unchallenged; and that such "resident" members had, "within one year before the commencement of the action, . . . paid[] a tax that funds the defendant local agency."

SDOG relied on *Fistes* to support its argument that the payment of taxes to the state, as opposed to the "local agency" (i.e., District), was sufficient to establish taxpayer standing under section 526a.  *Fistes* held a plaintiff corporation's allegation that it had paid state taxes was sufficient to overcome a demurrer on the ground it lack standing under section 526a in an action against the defendant school district because the state was the primary source of funds for that defendant.  (*Fistes*, *supra*, 38 Cal.App.5th at pp. 692–693.)

4

The trial court granted Fonseca's request to bifurcate, allowed the parties to file supplemental briefs on the standing issue, and set the matter for an evidentiary hearing. In addition to his previous arguments, Fonseca in his supplemental brief argued that SDOG lacked standing because its lawsuit was not seeking to "restrain[] and prevent[]" an illegal expenditure or waste of funds as set forth in section 526a, but rather was a suit to "set aside a settlement and recover attorney's fees"; that before initiating suit, SDOG failed to demand that District "cure the situation complained of and received a refusal by the District to do so"; and that section 526a does not apply when the lawsuit involves an abuse of discretion by a government body, as opposed to a duty to act, and the settlement between District and Gonzalez was the result of an exercise of discretion by District.

In its supplemental brief, SDOG argued section 526a was not limited to a judgment "restraining and preventing" an illegal expenditure or waste of funds but also included an action to disgorge funds on an illegal contract. SDOG also argued it was not required to make a demand on District prior to initiating its lawsuit because such a demand would have been "useless and unavailing" given that Fonseca was District's superintendent at the time.

Regarding the "resident" requirement in subdivision (a) of section 526a, SDOG argued it had paid a tax within the meaning of the statute. Specifically, SDOG board member Theresa Quiroz stated that " 'in the middle of 2016'—which is within the 12 months preceding the commencement of this lawsuit—SDOG held an open-government training session within the geographic boundaries [of] the District. [Citation.] Mr. Quiroz [also stated] that the training session was conducted at a restaurant where SDOG purchased food for the training session. [Citation.] SDOG's purchases at the

5

restaurant were subject to sales tax. [Citation.] Nearly 4% of the sales tax is levied by the State. See Rev. & Tax. Code § 6051 et seq."

SDOG also argued that certain of its members lived within District's jurisdiction; that the members had paid property, income, and sales tax to the state for the last five years; and citing *Fistes*, that such payments were sufficient for standing, even if the payments were not made directly to District. (See *Fistes*, *supra*, 38 Cal.App.5th at pp. 692–693.) Finally, it argued District was not a necessary party as an action under 526a may be maintained against an officer, agent, or other person acting on behalf of a local agency.

The initial hearing on standing took place on February 11, 2020. Mr. Quiroz testified he has been a board member of SDOG, "a watchdog organization for governments," for more than 10 years. As noted, he also had been designated SDOG's PMK. Mr. Quiroz stated SDOG uses a "P.O. box" for mail because it has "no money"; and it holds meetings in restaurants throughout San Diego and in its attorney's law office. A person can become a member of SDOG by filling out an application through SDOG's website or on "Twitter." Membership in SDOG is free. The record shows the court admitted three unredacted application forms from members of SDOG that stated they lived within District's jurisdiction.

Mr. Quiroz also testified that when SDOG holds meetings it buys soft drinks and food for its members, which are "subject to sales tax." Mr. Quiroz did not state when these purchases were made, however. He further testified that he lived in the City of San Diego, and that over the last five years he has paid income, property, and sales tax.

On cross-examination, Mr. Quiroz initially stated SDOG had not held any meetings within District's jurisdiction within one year prior to the

6

commencement of this action. He did not know if SDOG had ever paid taxes in District's jurisdiction. He admitted that he was not a resident of, nor did he work or own property in, District. He also did not attend classes within District's boundaries.

Mr. Quiroz also stated he had never met any of the three individuals whose applications were admitted to show SDOG members lived within District's jurisdiction. He admitted a portion of these applications—where it says at the bottom of the form whether the applicant was admitted or denied—were not checked off or filled out, although he recalled the three applicants were approved as members of SDOG. However, Mr. Quiroz did not know when the three applications had been submitted to, and reviewed by, SDOG.

Mr. Quiroz recalled that certain SDOG members' applications had been redacted and that at his PMK deposition he was instructed by counsel of SDOG not to disclose the applicants' names on privacy grounds. Therefore, Mr. Quiroz agreed that, at his deposition, he did not provide the names of *any* SDOG member; that he did not have any independent knowledge whether members whose applications had been redacted actually resided in the jurisdiction of District; that he did not personally know any of these particular members, when they became members or if they were still members; and that he also had no knowledge whether any such members had ever attended an SDOG meeting.

Mr. Quiroz at the hearing was then asked about the details of this lawsuit. He stated SDOG was not trying to restrain or prevent some act from occurring in this lawsuit, as it instead was trying to recoup money that was illegally allocated for a settlement. Mr. Quiroz testified, albeit incorrectly, that SDOG had sued the parties who had entered into the settlement

7

agreement. He later testified he did know whether District had been sued, and was unsure who were the parties in the settlement, despite being the PMK for, and CEO of, SDOG.

On redirect, Mr. Quiroz was asked about a "boot camp" SDOG held in a restaurant in 2016 somewhere near District headquarters. He replied, "I do remember a boot camp in a restaurant, but I didn't know if that was near the . . . District." Mr. Quiroz added to get to the "boot camp" he took one of the last few exits before reaching the Mexican border, and SDOG paid the restaurant "for some of the food that was made available" for the event. However on recross, Mr. Quiroz confirmed he was unsure whether the restaurant was located within District.

Ms. Quiroz testified she has been on the board of SDOG for about 12 years. She recalled SDOG "in the middle of 2016" held a training session at a restaurant within District's jurisdiction. Ms. Quiroz also testified that around February 17, 2017, when an article was disseminated about the subject matter of this case, SDOG had held a board meeting and at that meeting it had considered the three unredacted applications previously admitted by the court. Specifically, she testified the three applications were approved by the board of SDOG between February 17 and March 1, 2017, the latter being the date this lawsuit was filed. However on further cross-examination, Ms. Quiroz admitted the board did not consider and approve the three applicants whose names had not been redacted until January 24, 2018, several months after SDOG filed its lawsuit.

The court issued its tentative ruling on February 14, 2020, finding SDOG lacked standing under section 526a. The court found, "The statute does not provide the basis for a plaintiff to challenge a completed settlement between a government entity and a third party, because such a settlement is

8

in the discretion of a governing board and it is not an action 'restraining and preventing an illegal expenditure.' See *San Bernardino County v. Superior Court* (2015) 239 Cal.App.4th 679, 686–688 (a case in which Mr. Briggs was plaintiff's counsel). This is particularly true when the plaintiff has sued a defendant who is not even a party to the agreement."

The court also found SDOG failed to establish that either it, or one of its members who qualifies as a "resident" within the meaning of subdivisions (a) and (d)(2) of section 526a, paid a tax that funded District within one year prior to the commencement of this action. The court noted it was "astonished" by Mr. Quiroz's "complete lack of knowledge and understanding of the intricacies of this legal issue involving the lawsuit filed by his organization."

The court cited in detail to Mr. Quiroz's testimony including that he had never met any of the three applicants who sought membership in SDOG and that did not know when SDOG had admitted the three as members of the organization, despite the fact Mr. Quiroz was the "CEO of SDOG." The court also found information that it considered to be part of the "key question" in deciding standing was omitted as a direct result of the instruction by SDOG's counsel at Mr. Quiroz's PMK deposition not to identify the names of SDOG's members whose applications had been redacted. The court also found Mr. Quiroz's testimony that SDOG held a "boot camp/lunch in the school district at a restaurant that was within the confines of the school district" lacking in detail and unpersuasive, noting the "best the witness could remember was that the restaurant was located somewhere North of the Mexico Border in South Bay—San Diego County."

Regarding the standing issue that was addressed in Fonseca's summary judgment motion, the court ruled it had then addressed that issue

9

"in a very peripheral fashion" and it then had not taken into account the law and evidence subsequently offered by the parties. The court thus found it was "in a better position to address this issue fully on its merits and *sua sponte* reverse[d] its previous ruling on standing which was in favor of the plaintiff[]."

Following its tentative ruling, the court on February 19, 2020 heard argument for a second time on the standing issue. The following day, the court affirmed its tentative after reading and reviewing "all cases cited in the supplemental argument by counsel." It ordered the case dismissed with prejudice, finding the lack of standing was jurisdictional that could never be waived by the parties and that could be ruled on "at any time before and including trial."

DISCUSSION

A. *Section 526a*

" 'At its core, standing concerns a specific party's interest in the outcome of a lawsuit. [Citations.] We . . . require a party to show that he or she is sufficiently interested as a prerequisite to deciding, on the merits, whether a party's challenge to legislative or executive action independently has merit.' (*Weatherford* [*v. City of San Rafael* (2017)] 2 Cal.5th [1241,] 1247; accord, *People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 495 [' "Standing is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the plaintiff." '].) Under section 367, ' "[o]nly a real party in interest has standing to prosecute an action, except as otherwise provided by statute." ' (*Summers v. Colette* (2019) 34 Cal.App.5th 361, 367; accord, *Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 525.)" (*Fistes, supra*, 38 Cal.App.5th at p. 688.)

10

"[S]ection 526a permits a taxpayer to bring an action to restrain or prevent an illegal expenditure of public money. No showing of special damage to a particular taxpayer is required as a requisite for bringing a taxpayer suit." (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29.) The primary purpose of section 526a is to " 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' " (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267–268 (*Blair*).) To promote this remedial purpose, section 526a is construed broadly. (*Id.* at p. 268.)

Subdivision (a) of the statute provides: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a *resident therein*, or by a *corporation*, who is assessed for and is liable to pay, or, within *one year before* the commencement of the action, has paid, a tax that funds the defendant local agency, including but not limited to, the following: [¶] (1) An income tax. [¶] (2) A sales and use tax or transaction and use tax initially paid by a consumer to a retailer. [¶] (3) A property tax, including a property tax paid by a tenant or lessee to a landlord or lessor pursuant to the terms of a written lease. (4) A business license tax." (§ 526a, subd. (a), italics added.)

Subdivision (d)(1) of section 526a defines a " 'local agency' " to mean "a city, town, county, or city and county, or a *district*, public authority, or any other political subdivision in the state." (Italics added.) Subdivision (d)(2) of the statute defines " 'resident' " to mean "a person who lives, works, owns property, or attends school *in the jurisdiction* of the defendant local agency." (§ 526a, subd. (d)(2), italics added.)

11

B. *Guiding Principles*

Familiar principles guide our consideration. Our fundamental task is to ascertain the Legislature's intent and effectuate the law's purpose, giving the statutory language its plain and commonsense meaning. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476.) We examine that language in the context of the entire statutory framework to discern its scope and purpose and to harmonize the various parts of the enactment. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 (*Coalition*).) "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Ibid.*)

" 'Both standing and the interpretation of statutes are questions of law to which we typically apply a de novo standard of review.' " (*California DUI Lawyers Assn. v. Department of Motor Vehicles* (2018) 20 Cal.App.5th 1247, 1258; accord, *San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73.) Here, the court dismissed the action for lack of standing after making among other findings that neither SDOG nor a "resident," as defined in section 526a, subdivisions (a) and (d)(2), paid a tax that funded District within one year before the commencement of the action. In reviewing the court's determination, we must "view the evidence in the light most favorable to the judgment [or order of dismissal], and are bound by the trial court's findings that are supported by substantial evidence." (*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 139 Cal.App.4th 1006, 1012.)

12

Where, as here, a court finds a plaintiff has failed to carry his or her burden of proof, the question is more properly stated not in terms of substantial evidence, but rather "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 (*I.W.*) [noting in a "case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment . . . because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case"], disapproved on another ground as stated in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

C. *Analysis*

We conclude section 526a, subdivisions (a) and (d)(2) are unambiguous. (See *Coalition*, *supra*, 34 Cal.4th at p. 737.) For SDOG to have standing to maintain this action, it was required to show either it, or one of its members[5] who was a "resident" within the meaning of the statute, paid a tax that funded District within one year of the commencement of the action.

With respect to SDOG, the evidence it proffered at the standing hearing does not compel as a matter of law a finding in its favor. (See *I.W.*, *supra*, 180 Cal.App.4th at p. 1528.) To the contrary, the court found the

---

[5] For purposes of this analysis, we will assume—without deciding—that SDOG may assert "associational standing" if one or more of its members qualify as a "resident" within the meaning of section 526a, as SDOG argues on appeal.

13

testimony of Mr. Quiroz, the CEO and PMK of SDOG, less than credible. It was "astonished" by his lack of knowledge about this lawsuit and its parties, and found the "best" he could do regarding a "boot camp" held by SDOG when it allegedly paid taxes on food and soft drinks was to remember it took place at some unnamed restaurant sometime in 2016, possibly within the jurisdiction of District. (See *Oldenburg v. Sears, Roebuck & Co.* (1957) 152 Cal.App.2d 733, 742 [recognizing the time-honored principle that the trier of fact is the exclusive judge of the credibility of the evidence and can reject evidence as unworthy of credence].)

The record also shows SDOG offered the testimony of Ms. Quiroz to support its claim it paid taxes on food and soft drinks at the "boot camp." While she confirmed the "boot camp" was held within the jurisdiction of District, she, like Mr. Quiroz, was unable to offer any details including when it was held, where it was held, how much tax was paid, and who was in attendance. SDOG also did not offer any receipt or other document to support her testimony or that of Mr. Quiroz regarding SDOG's alleged payment of taxes. We conclude this evidence is woefully insufficient to support a finding as a matter of law that prior to the commencement of this action SDOG in 2016 itself paid taxes that funded District. (See *I.W.*, *supra*, 180 Cal.App.4th at p. 1528.)

We reach the same conclusion with respect to the members of SDOG that it claims resided within District's jurisdiction and who paid taxes within one year of the commencement of this action. As to the three unredacted applications that Ms. Quiroz stated were considered by the board of SDOG in the weeks before it initiated this action, we note she was impeached on this point during cross-examination when she admitted the applications actually

14

were submitted on January 24, 2018, or months *after* SDOG commenced this lawsuit.

In addition, even if such testimony is credited, there was no evidence that any of these three applicants/members paid any taxes within one year before SDOG commenced this action. As such, we likewise conclude this evidence is woefully insufficient to support a finding that, as a matter of law, any one of the three applicants had standing under section 526a—in turn giving SDOG "associational standing"—to pursue this action. (See *I.W.*, *supra*, 180 Cal.App.4th at p. 1528.)

Moreover, with respect to the redacted member applications that were the subject of Mr. Quiroz's PMK deposition, we find this evidence is also insufficient to support standing. The record shows the court viewed the redacted applications as "key" missing information in the case, as counsel of SDOG instructed Mr. Quiroz not to reveal the names of such applicants who presumably lived within District. In any event, there also is no evidence that any of these members paid taxes as required under section 526a to support SDOG's standing to bring this action.

Finally, with respect to Mr. Quiroz's testimony that he paid income, property, and sales tax to the state during the five years prior to the commencement of this action, we note he does not qualify as a "resident" within the meaning of subdivision (d)(2) of section 526a, inasmuch as he testified he did not live, work, own property, or attend school within District's jurisdiction.[6]

---

[6] In light of our decision, we deem it unnecessary to reach any of the other issues raised by the parties.

## DISPOSITION

The order dismissing SDOG's action with prejudice for lack of standing is affirmed.  Defendant Fonseca to recover his costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

O'ROURKE, J.

16