Filed 4/15/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CALIFORNIA DUI LAWYERS ASSOCATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF MOTOR VEHICLES et al., <br><br> Defendants and Respondents. <br><br>——————————————— <br><br> CALIFORNIA DUI LAWYERS ASSOCIATION et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF MOTOR VEHICLES et al., <br><br> Defendants and Appellants. | B305604 <br><br> (Los Angeles County Super. Ct. No. BC553552) <br><br><br> B309145 <br><br> (Los Angeles County Super. Ct. No. BC553552) |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Holly J. Fujie, Judge. Judgment affirmed in part and reversed in part. Order affirmed and remanded with instructions.

Law Offices of Robert S. Gerstein, Robert S. Gerstein; Law Office of Joshua C. Needle, Joshua C. Needle; Carlton Fields, Ellyn S. Garofalo and Amir Kaltgrad for California DUI Lawyers Association and Steven R. Mandell.

Attorney General of California, Rob Bonta; Senior Assistant Attorney General, Chris A. Knudsen; Supervising Deputy Attorney General, Gary S. Balekjian; and Deputy Attorney General, Jacqueline H. Chern for California Department of Motor Vehicles and Steve Gordon.

---

**INTRODUCTION**

The Department of Motor Vehicles (DMV) conducts administrative hearings to determine whether automatic suspension of a driver's license is warranted after the driver has been arrested for driving under the influence. At these hearings, the DMV mandates that the hearing officers simultaneously act as advocates for the DMV and as triers of fact. The DMV also authorizes its managers to change hearing officers' decisions, or order the hearing officers to change their decisions, without notice to the driver.

Based on these practices, the California DUI Lawyers Association and attorney Steven R. Mandell (collectively, CDLA) sued the DMV and its director[1] for injunctive and declaratory relief. CDLA alleged three cause of action: (1) violation of 42 United States Code section 1983 affecting due process rights under the Fourteenth Amendment to the United States Constitution (section 1983); (2) violation of due process rights under article I, section 7 of the California Constitution (state due process); and (3) "illegal expenditure of funds" under Code of Civil Procedure section 526a (section 526a). CDLA alleged that both

---

1    Jean Shiomoto was the director of the DMV at the time CDLA filed its complaint. The director is currently Steven Gordon.

2

the lack of a neutral hearing officer, and the ex parte communications between DMV managers and hearing officers, violate drivers' rights to procedural due process under the California and United States Constitutions.

CDLA and the DMV each moved for summary judgment, or in the alternative, summary adjudication. The trial court (Hon. Rita Miller, presiding) held CDLA did not have taxpayer standing to assert its claims. The trial court granted the DMV's motion for summary judgment on that basis, and denied CDLA's motion for summary judgment. In *California DUI Lawyers Assn. v. Department of Motor Vehicles* (2018) 20 Cal.App.5th 1247 (*CDLA I*), this court reversed the judgment, with instructions to vacate the orders granting the DMV's summary judgment motion and denying CDLA's summary judgment motion. (*Id.* at p. 1266.)

On remand, and after further briefing, the trial court (Hon. Holly J. Fujie, presiding) addressed the merits of the parties' motions. It denied both parties' motions for summary judgment, but (1) granted the DMV's motion for summary adjudication of CDLA's first cause of action (section 1983); and (2) granted CDLA's motion for summary adjudication of its second (state due process) and third (section 526a) causes of action. The trial court concluded the DMV's structural design allowing for ex parte managerial interference with the hearing officers' decision-making violates due process under the California Constitution, and thus constitutes waste under Code of Civil Procedure section 526a. The trial court also granted the DMV's motion for summary adjudication on the following issue: "As a matter of law, the DMV hearing officer's dual role as advocate for the DMV and trier of fact does not violate due process."

The trial court entered judgment in favor of the DMV on the first cause of action (section 1983), and in favor of CDLA on the second (state due process) and third (section 526a) causes of action. The judgment enjoined the DMV from maintaining or

3

implementing a structure allowing managerial interference with hearing officers' decision-making through "ex parte communications or command control." It also found CDLA to be the prevailing party for purposes of an award of attorneys' fees.

In this consolidated[2] appeal, CDLA appeals from the judgment contending the trial court erred by: (1) granting the DMV summary adjudication on the issue of whether a hearing officer's dual roles as advocate for the DMV and adjudicator violates drivers' due process rights; and (2) granting the DMV's motion for summary adjudication of CDLA's first cause of action under section 1983. The parties also both appeal from the post-judgment award of attorneys' fees.

For the reasons discussed below, we conclude, based on the undisputed facts, CDLA was entitled to judgment as a matter of law on each of its causes of action. CDLA is therefore entitled to summary judgment. We further conclude the trial court's attorneys' fee award did not constitute an abuse of discretion. In light of CDLA's additional success on appeal, however, we remand the matter to the trial court to reevaluate the amount of fees awarded to CDLA (but express no opinion whether the amount should be increased), and to calculate the amount of fees and costs CDLA incurred on appeal.

---

2    On February 18, 2021, we consolidated the appeals in B305604 and B309145 for briefing, oral argument, and decision.

## FACTUAL AND PROCEDURAL BACKGROUND

We borrow much of our description of the background from *CDLA I.*

### A. Statutory Background

"This action involves the 'administrative per se' or 'APS' system used to suspend a driver's license following an arrest for driving under the influence. 'Under the administrative per se law, the DMV must immediately suspend the driver's license of a person who is driving with .08 percent or more, by weight, of alcohol in his or her blood. ([Veh. Code,] § 13353.2, subd. (a)(1).) The procedure is called 'administrative per se' because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration . . . .' (*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 155.)

"'When a driver is arrested for driving under the influence and is determined to have a prohibited blood-alcohol content (BAC), the arresting officer or the DMV serves the driver with a "notice of [an] order of suspension or revocation" of his or her driver's license, advising that the suspension will become effective 30 days from the date of service. (Veh. Code, §§ 13353.2, subds. (b) & (c), 13353.3, subd. (a).) The notice explains the driver's right to an administrative hearing before the effective date of the suspension if the driver requests a hearing within 10 days of receipt of the notice. (*Id.*, §§ 13353.2, subd. (c), 13558, subd. (b).)' (*Brown v. Valverde* (2010) 183 Cal.App.4th 1531, 1536-1537 (*Brown*).)

"At the hearing, '[t]he sole task of the hearing officer is to determine whether the arresting officer had reasonable cause to believe the person was driving, the driver was arrested, and the person was driving with a BAC of 0.08 percent or higher. If the hearing officer determines that the evidence establishes these

5

three facts by a preponderance of the evidence, the license will be suspended. (Veh. Code, §§ 13558, subd. (c)(1), 13557, subd. (b)(2), 14104.2, subd. (a) . . .)' (*Brown, supra,* 183 Cal.App.4th at pp. 1537-1538, fn. omitted.) DMV bears the burden of proof. (*Petrus v. Department of Motor Vehicles* (2011) 194 Cal.App.4th 1240, 1244 (*Petrus*).)" (*CDLA I, supra,* 20 Cal.App.5th at pp. 1251-1252.)

### B. CDLA's Complaint

"CDLA filed a complaint on August 1, 2014, alleging that the APS hearing system is unfair and unconstitutional. CDLA alleged that continued possession of a driver's license is a vital property right that cannot be suspended without due process of law. According to the complaint, '[T]he APS system . . . *requires* the Hearing Officers to act both as advocate for the DMV *and* arbiter/decision maker, creating an obvious and inherent conflict of interest and bias favoring one party over the other.' CDLA alleged that as a result, the 'APS hearings violate the State and Federal Due Process rights . . . of license holders by failing to provide a fair, neutral and impartial Hearing Officer.' In addition, 'the APS system unconstitutionally allows DMV managers, executives, and/or administrators ex parte communications with the Hearing Officers and direct control over the decision-making process.' CDLA asserted that '[t]hese procedures and practices are unconstitutional on their face and as applied.'

"CDLA alleged that according to DMV written materials, the hearing officer at each APS hearing acts as investigator, advocate for DMV, and fact finder. CDLA's complaint noted that California's Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.) states that a person may not serve as a presiding officer in an adjudicative proceeding where '[t]he person has served as investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage,' or '[t]he person is

6

subject to the authority, direction, or discretion of a person who has served as investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage.' (Gov. Code, § 11425.30, subd. (a)(1) & (2).) However, the Vehicle Code 'specifically exempts the APS adjudicative hearings from the prophylactic separation of functions mechanism set forth in the APA.' CDLA also alleged that hearing officers' 'initial . . . decision to set aside a suspension is subject to ex parte review, criticism, and unilateral reversal' by DMV management, 'prior to it being issued to the licensee, without notice [to] or input from the licensee.'" (*CDLA I*, 20 Cal.App.5th at pp. 1252-1253.)

### C.     *Summary Judgment Motions*

As discussed above, both parties moved for summary judgment, or in the alternative, summary adjudication. After concluding CDLA had no standing, the trial court entered judgment in favor of the DMV. In *CDLA I*, we reversed the judgment, with instructions to vacate the orders granting the DMV's motion for summary judgment and denying CDLA's motion. (*CDLA I, supra*, 20 Cal.App.5th at p. 1266.)

On remand, the trial court vacated the previous orders on the summary judgment motions, and directed the parties to file new motions incorporating prior filings, along with supplemental briefs. The parties complied, and filed additional briefing at the request of the trial court.

In its motion, CDLA argued a driver's license cannot be suspended without due process of law, and the combination of advocate and adjudication roles in a single, subordinate DMV employee violates required due process protections.[3] CDLA

---

3     Because the DMV does not appeal the trial court's ruling that ex parte communications between hearing officers and managers violate drivers' due process rights, we omit the parties' arguments in their motions for summary judgment and

7

submitted evidence in support of its motion, including the DMV's Driver Safety Manual (DSM) and DMV's responses to written discovery. The DMV admitted the following facts in response to CDLA's requests for admission: (1) APS hearings are adversarial; (2) the DSM accurately reflects the policies and practices of the [DMV]; (3) the DSM defines the role of a hearing officer as "a trier of fact as well as an advocate for the department and driver safety"; (4) the DSM explains that in the hearing officer's capacity as a "trier of fact" he or she must "[h]ear, weigh, and deliberate upon evidence" and "[m]ake findings and render a decision relating to an issue of fact"; (5) the DSM explains that in the hearing officer's capacity as an "advocate" he or she must "[a]ssist, defend, prepare and/or present DMV's case" and "[p]romote driver safety"; (6) the hearing officer neither has a duty to assist the driver in preparing for the hearing, nor a duty to present any evidence that would support the position of the driver at the hearing; and (7) as "trier of fact" at APS hearings, the hearing officer rules on the admissibility of the documentation he or she offers as evidence as "advocate for the [DMV]" in support of the DMV's position at the APS hearing.

In its own motion and in opposition to CDLA's motion, the DMV argued CDLA failed to submit any evidence of actual bias on the part of hearing officers. For example, CDLA's person most qualified testified at his deposition that CDLA is unaware of situations where a hearing officer was reprimanded, suspended, demoted, or otherwise disciplined for setting aside too many license suspensions. The DMV also relied on the DSM's statement that hearing officers "must always be fair and impartial to preserve the integrity of the hearing process." The DMV further argued CDLA's section 1983 claim fails as a matter of law because it cannot be brought against a state entity, and

oppositions (and discussion of evidence submitted in the trial court) on this issue.

the DMV director is immune from liability under the doctrine of qualified immunity.

After considering the parties' written submissions and oral argument, the trial court granted summary adjudication in favor of the DMV on CDLA's section 1983 cause of action, and in favor of CDLA on its causes of action for violation of due process rights under the California Constitution and illegal expenditure of funds. With respect to the first cause of action (section 1983), the trial court concluded the doctrine of qualified immunity did not shield the director of the DMV from liability, but found in favor of the director because there was "no evidence indicating that [the director] ha[d] some personal involvement in the DMV APS hearings." With respect to the second (state due process) and third (section 526a) causes of action, the trial court found the "unilateral power of a DMV manager to change a hearing officer's decision without notice or a rehearing for [the driver]" is "a clear violation of due process . . . ." The trial court found the hearing officer's dual role of advocate and trier of fact, however, was not a violation of due process. It reasoned: "[T]he evidence presented by [CDLA] does not lay the required foundation for finding that bias or prejudice exists with respect to a hearing officer's decision in connection with an APS hearing."

The trial court entered judgment in favor of CDLA on its state due process and section 526a causes of action, and in favor of the DMV on CDLA's section 1983 cause of action. The judgment permanently enjoined the DMV from "maintaining or implementing a structure for Administrative Per Se hearings on the suspension or revocation of a driver's license that allows *ex parte* communications or command control by DMV Driver Safety Branch managers over Driver Safety Hearing Officers' decisions, including set asides or suspensions, before decisions are issued."

9

### D. Attorneys' Fee Award

Following entry of judgment, CDLA moved for attorneys' fees under Code of Civil Procedure section 1021.5. CDLA sought fees in the amount $5,242,243 (based on a lodestar amount of $2,621.121.50 and a multiplier of 2.0). The DMV opposed the motion on several grounds, including that the requested fees should be reduced because CDLA was only partially successful, and the claimed hours were not reasonably spent.

The trial court reduced the hourly rates of several attorneys, but declined to reduce the number of hours spent. The trial court stated: "[T]o the extent that the Court has any issues with the number of hours, that is reflected in its calculation of the individual attorney's billable rate." It also declined to reduce the fee award on the basis that CDLA was only partially successful in the action. Thus, after denying CDLA's request for a lodestar multiplier of 2.0, the trial court awarded CDLA attorneys' fees in the amount of $2,123,591.

### E. Appeals

CDLA appeals from the trial court's judgment and attorneys' fee order. The DMV cross-appeals from the attorneys' fee order.

## DISCUSSION

## I. CDLA's Appeal from the Judgment

### A. Standard of Review

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) If the defendant meets this burden, the burden shifts to the

10

plaintiff to present evidence creating a triable issue of material fact. (*Ibid*.) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

## B. Hearing Officers' Dual Role as Advocate and Adjudicator

### 1. Due Process Principles

Both the federal and state Constitutions compel the government to afford people due process before depriving them of any property interest. (U.S. Const., 14th Amend. ["nor shall any State deprive any person of life, liberty, or property, without due process of law"]; Cal. Const., art. I, § 7, subd. (a) ["A person may not be deprived of life, liberty, or property without due process of law . . ."].)

"'A driver's license cannot be suspended without due process of law.' (*Cinquegrani v. Department of Motor Vehicles* (2008) 163 Cal.App.4th 741, 750; see also *Petrus, supra*, 194 Cal.App.4th at p. 1244; *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 90 (*Nightlife Partners*) ['The protections of procedural due process apply to administrative proceedings . . . ; the question is simply what process is due in a given circumstance. ' (citation omitted)].) "'The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" [Citations.] The opportunity to be heard must be afforded "at a meaningful time and in a meaningful manner." [Citations.] To ensure that the opportunity

11

is meaningful, the United States Supreme Court and [the California Supreme Court] have identified some aspects of due process as irreducible minimums. For example, whenever "'due process requires a hearing, the adjudicator must be impartial.'" (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212 [(*Today's Fresh Start*)].) In other words, '[d]ue process . . . *always* requires a relatively level playing field, the "constitutional floor" of a "fair trial in a fair tribunal," [is] a fair hearing before a neutral or unbiased decision-maker.' (*Nightlife Partners, supra*, 108 Cal.App.4th at pp. 81, 90.)" (*CDLA I, supra*, 20 Cal.App.5th at p. 1259.)

In *Today's Fresh Start,* our Supreme Court clarified the standard applicable to prove a due process violation based on overlapping functions of an administrative agency: "[T]he general rule endorsed by both the United States Supreme Court and this court is that '[b]y itself, the combination of investigative, prosecutorial, and adjudicatory functions within a single administrative agency does not create an unacceptable risk of bias and thus does not violate the due process rights of individuals who are subjected to agency prosecutions.'" (*Today's Fresh Start, supra*, 57 Cal.4th at p. 221.) Our Supreme Court further explained: "To prove a due process violation based on overlapping functions thus requires something more than proof that an administrative agency has investigated and accused, and will now adjudicate. '[T]he burden of establishing a disqualifying interest rests on the party making the assertion.' [Citation.] That party must lay a 'specific foundation' for suspecting prejudice that would render an agency unable to consider fairly the evidence presented at the adjudicative hearing [citation]; it must come forward with 'specific evidence demonstrating actual bias or a particular combination of circumstances creating an unacceptable risk of bias' [citations]." (*Ibid*.)

### 2. APS Hearing Officers' Dual Roles as Advocate and Adjudicator Creates An Unacceptable Risk of Bias

CDLA contends the DMV's APS hearing structure violates the California and federal due process rights of drivers by combining the advocacy and adjudicatory roles into a single DMV employee. We agree.

The parties have not directed us to, and we have not located, a case directly addressing the issue presented, i.e., whether the APS hearing officers' dual roles of advocate and trier of fact violates drivers' due process rights. In other contexts, however, courts have held procedural fairness requires some internal separation between advocates and decision makers to preserve neutrality.

For example, in *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1 (*Quintanar*), the licensees challenged the Department's practice of having a Department prosecutor prepare a report of the hearing, including a recommended outcome, and forwarding it to the ultimate decisionmaker while a final Department decision was still pending. (*Id.* at pp. 5-6.) In concluding the practice violated the APA, our Supreme Court stated: "Procedural fairness does not mandate the dissolution of unitary agencies, but it does require some internal separation between advocates and decision makers to preserve neutrality." (*Id.* at pp. 10-11.) It further explained: "One fairness principle directs that in adjudicative matters, one adversary should not be permitted to bend the ear of the ultimate decision maker or the decision maker's advisers in private. Another directs that the functions of prosecution and adjudication be kept separate, carried out by distinct individuals." (*Id.* at p. 5.)

Similarly, in *Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575 (*Howitt*) the same county counsel's office represented the county against an employee in a grievance proceeding and

13

advised the quasi-independent adjudicatory body tasked with deciding the grievance. (*Id.* at p. 1578.) The Court of Appeal concluded this dual role was permissible, but only if a screening procedure between prosecutors and advisers was instituted. (*Id.* at p. 1586.) In so holding, the court explained that overlapping functions within an administrative agency are generally permissible absent specific evidence of bias. (*Id.* at p. 1580.) "A different issue is presented, however, where *advocacy* and decisionmaking roles are combined. By definition, an advocate is a partisan for a particular client or point of view. The role is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator." (*Id.* at p. 1585.)

Finally, in *Nightlife Partners, supra,* 108 Cal.App.4th 81 the same legal counsel represented the city in connection with a business permit denial and then advised the third-party hearing officer on administrative appeal from that denial. (*Id.* at p. 85.) The court rejected the city's argument that the hearing met due process standards because there were no concrete facts of actual bias: "We conclude that the issue is not whether there was actual bias, but whether the hearing met minimum constitutional standards of due process[.]" (*Id.* at p. 86.) The court concluded the city attorney's "role as advisor to the decision maker" regarding denial of the plaintiff's regulatory permit "violated petitioners' right to due process" because the attorney "acted as both an advocate of City's position and as advisor to the supposedly neutral decision maker." (*Id.* at p. 94.)

Taken together, we conclude *Quintanar*, *Howitt*, and *Nightlife Partners* stand for the following proposition: Although procedural fairness does not prohibit the combination of the advocacy and adjudicatory functions within a single administrative agency, tasking the same individual with both roles violates the minimum constitutional standards of due process. The irreconcilable conflict between advocating for the agency on one hand, and being an impartial decisionmaker on the

14

other, presents a "'particular combination of circumstances creating an unacceptable risk of bias.'" (*Today's Fresh Start, supra*, 57 Cal.4th at p. 221, quoting *Morongo Band of Mission Indians v. State Water Resources Control Bd*. (2009) 45 Cal.4th 731, 741.)

Here, the DMV acknowledged the DMV is a party to an APS hearing, the hearing is adversarial, and the hearing officer's role involves both advocating on behalf of the DMV and acting as fact finder. That CDLA may not have demonstrated actual bias is not dispositive. Rather, evidence of a "particular combination of circumstances creating an unacceptable risk of bias" is sufficient to render irrelevant the "presumption that agency adjudicators are people of "'conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances'". . . ." (*Today's Fresh Start, supra*, 57 Cal.4th at pp. 221-222.)

The DMV's attempt to distinguish *Quintanar, Howitt*, and *Nightlife Partners* is unavailing. First, the DMV explains that in *Quintanar*, there were ex parte communications between a prosecutor and the ultimate decisionmaker, whereas here, there were no such ex parte communications because "the DMV hearing officer is the decisionmaker." That distinction, however, only demonstrates how the practice here poses an even greater threat to due process—there is no need for ex parte communications because the advocacy and decisionmaking roles are combined in one individual.

Next, the DMV argues *Howitt* and *Nightlife Partners* are distinguishable because the "DMV hearing officer's functions involve considerably less overlap than the functions of the attorneys and hearing officers" in those cases. We are unpersuaded. Due process protections are not dispensed with simply because the "DMV hearing officer typically introduces two or three official documents into evidence and decides a limited number of issues." Rather, "whenever 'due process requires a

15

hearing, the adjudicator must be impartial.'" (*Today's Fresh Start, supra*, 57 Cal.4th at p. 212.)

Accordingly, we conclude combining the roles of advocate and adjudicator in a single person employed by the DMV violates due process under the Fourteenth Amendment and the California constitution Article I, section 7. (*See Today's Fresh Start, supra*, 57 Cal.4th at p. 212 ["[T]he United States Supreme Court and [California Supreme Court] have identified some aspects of due process as irreducible minimums[,]" including an impartial adjudicator].) The trial court therefore erred by granting the DMV's motion for summary adjudication that a hearing officer's dual roles of advocate for the DMV and adjudicator violates drivers' due process rights.

We acknowledge Vehicle Code section 14112, subdivision (b) purports to permit a hearing officer to be both an advocate and adjudicator by exempting APS hearings from the separation of functions requirement set forth in Government Code section 11425.30, subdivision (a).[4] Vehicle Code section 14112, subdivision (b) provides: "Subdivision (a) of Section 11425.30 of the Government Code does not apply to a proceeding for issuance, denial, revocation, or suspension of a driver's license pursuant to this division." Having concluded an APS hearing officer's dual roles of advocate and adjudicator violates due process, however, we further conclude Vehicle Code section 14112, subdivision (b) is

---

4       Government Code section 11425.30, subdivision (a) provides: "A person may not serve as presiding officer in an adjudicative proceeding in any of the following circumstances: [¶] (1) The person has served as investigator, prosecutor, or advocate in the proceeding of its preadjudicative stage."

unconstitutional to the extent it permits the DMV to combine the advocacy and adjudicatory roles in a single APS hearing officer.[5]

### C. CDLA is Entitled to Summary Adjudication of its First Cause of Action Under Section 1983

### 1. Applicable Legal Principles

Section 1983 provides, in relevant part: "Every person who, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." "Section 1983 is not itself a source of substantive rights, '"but merely provides 'a method for vindicating federal rights elsewhere conferred.'"'" (*McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1207.) "A [section] 1983 action may be brought for a violation of procedural due process." (*Zinermon v. Burch* (1990) 494 U.S. 113, 125.)

"[A] state, an entity acting as an 'arm of the state,' or a state official sued in his official capacity may not be considered a 'person' who may be liable under section 1983." (*McAllister v. Los Angeles Unified School District*, *supra*, 216 Cal.App.4th at p.

---

5       Relying on *Poland v. Department of Motor Vehicles* (1995) 34 Cal.App.4th 1128, the DMV contends the hearing officer may act as a proponent of evidence and trier of fact. CDLA concedes the DMV may task the same person with both collecting and developing the evidence and rendering a final decision. (See, e.g., *Today's Fresh Start, supra*, 57 Cal.4th at p. 220 [The same individual in an administrative agency may be tasked with "developing the facts and rendering a final decision"].) He or she must refrain, however, from *advocating* on behalf of the DMV as the DSM currently mandates (i.e., present the DMV's case and "promote driver safety," with no corresponding  duty to present any evidence that would support the position of the driver at the hearing).

1207.) "Of course[, however,] a state official in his or her official capacity, when sued for injunctive relief, would be a person under [section] 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (*Will v. Michigan Department of State Police, et al.* (1989) 491 U.S. 58, 71, fn. 10.)

## 2. A Plaintiff Seeking Injunctive Relief Against a State Official in His Official Capacity Need Not Demonstrate the Official's Personal Involvement in the Alleged Constitutional Violation

The DMV argues CDLA's section 1983 claim fails as a matter of law because: (1) the DMV director cannot be sued in his official capacity; and (2) even assuming CDLA intended to sue the DMV director in his individual capacity, CDLA's claim fails because the DMV director has no personal involvement in APS hearings.

The trial court found "the doctrine of qualified immunity, despite [the DMV's] arguments to the contrary, does not shield [the DMV director] from [liability under section 1983] as the doctrine is inapplicable here where [CDLA is] suing for injunctive and declaratory relief . . . ." It concluded, however, that CDLA's section 1983 claim failed as a matter of law because CDLA cited no evidence indicating the DMV director "ha[d] some personal involvement in the DMV APS hearings."

The trial court correctly noted the DMV director is not shielded from liability under section 1983 where, as here, CDLA is seeking prospective injunctive relief. (See *Will v. Michigan Department of State Police, et al., supra,* 491 U.S. at p. 71, fn. 10.) It erred, however, by requiring CDLA to demonstrate the DMV director's personal involvement in the DMV APS hearings. The DMV acknowledges CDLA "sued Gordon in his official capacity as the Director of the DMV." Because CDLA's section 1983 claim

18

was brought against a state official in his *official* capacities for prospective injunctive relief, no proof of personal involvement is required. (See *Hartmann v. Cal. Department of Corrections & Rehabilitation* (9th Cir. 2013) 707 F.3d 1114, 1127 ["'Suits against state officials in their official capacity therefore should be treated as suits against the State.' [Citation.] A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation."].)

We therefore turn to the merits of CDLA's section 1983 claim. That claim is premised on CDLA's allegation that the DMV's APS hearing structure (specifically, the lack of neutral hearing officers, and ex parte communications between hearing officers and DMV managers) violates drivers' due process rights under the Fourteenth Amendment to the United States Constitution. Because the lack of neutral hearing officers at APS hearings violates drivers' federal and state due process rights (as discussed above), we conclude the trial court erred by denying CDLA's motion for summary adjudication of its section 1983 claim.[6]

---

6      As noted above, the trial court ruled that the DMV's structural design allowing for ex parte managerial interference with the hearing officers' decision-making violates due process under the California Constitution. That ruling has not been appealed. It follows that the structural design also violates the Fourteenth Amendment. (See *Today's Fresh Start, supra*, 57 Cal.4th at p. 212 ["In light of the virtually identical language of the federal and state guarantees, we have looked to the United States Supreme Court's precedents for guidance in interpreting the contours of our own due process clause and have treated the state clause's prescriptions as substantially overlapping those of the federal Constitution"].)

## II.     The Parties' Appeals from the Attorneys' Fee Order

### A.     General Principles and Standard of Review

Under Code of Civil Procedure section 1021.5, a trial court "may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

A trial court awards attorneys' fees based on the lodestar method, i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) It has "broad authority to determine the amount of a reasonable fee." (*Ibid.*) "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Ibid.*) Those factors include "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).)

The trial judge "'is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) Thus, we review the trial court's determination of reasonable attorneys'

fees for abuse of discretion. (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 697.)

## B. The Trial Court Did Not Abuse Its Discretion in Determining the Attorneys' Fee Award

CDLA contends the trial court abused its discretion by denying CDLA an enhancement of the lodestar figure. The DMV counters the trial court properly denied an enhancement, but abused its discretion by failing to reduce the hours requested because CDLA's claimed hours were not reasonably spent.[7] As discussed below, we conclude these contentions do not warrant reversal under the deferential standard of review applicable here.

In denying CDLA's request for an enhancement of the lodestar figure, the trial court stated: "The declarations in support of the [m]otion do not set forth any information with respect to how the current matter precluded other employment by the respective attorneys. The Court also finds that the skill presented in this action does not warrant a multiplier because: (1) this action did not go to trial . . . (2) based on the deficiencies in certain of the briefs presented by the parties in connection with the [motions for summary judgment], the skill level of [CDLA's] counsel does not warrant a lodestar multiplier."

CDLA has not demonstrated the experienced trial judge abused her discretion. Despite the clear language of the order, CDLA argues the trial court failed to properly consider the evidence of extraordinary legal skill. It contends the trial court placed too much emphasis on the deficiencies in the motions for summary judgment (including lack of proper citations to facts and supporting evidence), as opposed to the attorneys' skill in formulating the novel and difficult questions raised, and

---

7 The DMV also argues the fees should have been reduced because CDLA was only partially successful in its lawsuit. Having concluded CDLA is entitled to summary judgment, this argument is moot.

conducting extensive research and investigation. These complaints do not come close to demonstrating the trial court's judgment was "clearly wrong." (*Serrano v. Priest, supra*, 20 Cal.3d at p. 49.)

We likewise reject CDLA's argument that the trial court failed to properly consider the factor of contingent risk and delay. The trial court considered that factor in determining the reasonable hourly rates of the attorneys. Specifically, in setting the hourly rate for the attorney who spent the most hours on the matter (Mr. Needle), the trial court stated: "The Court takes into account the contingency nature of Needle's work, as well as his tenacity in continuing with the case through an appeal that reversed the trial court's decision against his client." The trial court, therefore, properly declined to consider that factor again in determining whether to apply an enhancement. (See *Ketchum, supra*, 21 Cal.4th at p. 1138 ["[W]hen determining the appropriate enhancement, a trial court should not consider these factors to the extent they are already encompassed within the lodestar."].)

The DMV also failed to carry its burden to show the trial court's award of attorneys' fees constituted an abuse of discretion based on its contention that CDLA's claimed hours were not reasonably spent. CDLA supported its motion with declarations from its attorneys and billing records indicating the number of hours worked on the matter. The DMV argues CDLA's billings contain charges for hours "that were unnecessary, duplicative, administrative, vague, and block billed." The trial court, however, "reviewed the billing entries provided by [CDLA]" and found: "the billing entries sufficiently establish the tasks carried out in this matter and that such tasks were carried out in connection with the litigation of this matter. [The DMV] ha[s] not presented sufficient evidence . . . that the hours spent on various tasks were unreasonable, and to the extent that the Court has any issues with the number of hours, that is reflected in its calculation of

22

the individual attorney's billable rate. . . . [¶] . . . Although the use of multiple attorneys has undoubtedly resulted in some inefficiencies, in light of the unique factual and legal issues presented in this action, the Court finds that overall the tasks completed by counsel were within the realm of reasonability." The trial court thoroughly analyzed each of CDLA's nine attorneys' requested hourly rate, and reduced the hourly rate of six attorneys. We discern no abuse of discretion.

Accordingly, we conclude the trial court did not abuse its discretion in determining the attorneys' fee award. In light of CDLA's additional success on appeal, however, we remand the matter to the trial court to reevaluate the amount of fees awarded to CDLA (but express no opinion whether such fees should be increased), and to calculate the amount of fees CDLA incurred on appeal. (See *Serrano v. Unruh* (1982) 32 Cal.3d 621, 637 ["it is established that fees, if recoverable at all — pursuant either to statute or parties' agreement — are available for services at trial and on appeal."].)

## DISPOSITION

On remand, the trial court shall vacate the order denying both parties' motions for summary judgment, and enter a new order granting summary judgment in favor of CDLA. The judgment is reversed insofar as it entered judgment in favor of the DMV and against CDLA on "on the First Cause of Action for violation of due process under 42 U.S.C. § 1983: Due Process Rights Under the Fourteenth Amendment to the United States Constitution."

The judgment shall be modified as follows: (1) Judgment shall be entered in favor of CDLA and against the DMV director on CDLA's first cause of action, and in favor of CDLA and against the DMV and its director on CDLA's second and third causes of action; and (2) In addition to the permanent injunction regarding ex parte communications, the modified judgment shall also state:

23

the DMV is permanently enjoined and restrained from having its APS hearing officers function as advocates for the position of the DMV in addition to being finders of fact in the same adversarial proceeding.

On remand, the trial court is also directed to reconsider the amount of fees awarded to CDLA in light of CDLA's additional success on appeal (we express no opinion, however, whether the amount should be increased). CDLA is also awarded its costs and attorneys' fees on appeal. The trial court shall determine the reasonable amount of fees incurred on appeal, and include that amount in its order awarding CDLA attorneys' fees.

**CERTIFIED FOR PUBLICATION**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.

24